STATE OF CONNECTICUT *v.* BOBBY LEE RAWLS
(12213)

PETERS, C. J., SHEA, DANNEHY, SANTANIELLO and KLINE, Js.

Argued October 2—decision released December 17, 1985

*John W. Watson,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Robert A. Lacobelle,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

SHEA, J. After a jury trial, the defendant, Bobby Lee Rawls, was convicted of two counts of possession of narcotics in violation of General Statutes § 19-481 (a).[1] The defendant was sentenced to seven years imprisonment on one count, and to a consecutive sentence of seven years on the other count with execution suspended after one year, making a total effective sentence of fourteen years, suspended after eight, with five years probation.[2] The court, *Callahan, J.,* subsequently modified the sentences to run concurrently. From this judgment, the defendant appeals claiming (1) that he was denied the right to confront the witnesses against him as to the analysis of the drugs, and (2) that multiple convictions for the simultaneous possession of cocaine and heroin violated his rights under the double jeopardy clause of the United States con-

---

[1] In 1983, the legislature transferred General Statutes § 19-481 (a) to § 21a-279. Public Acts 1983, No. 83-141.

"[General Statutes] Sec. 21a-279. (Formerly Sec. 19-481). PENALTY FOR ILLEGAL POSSESSION. SUBSTITUTION OF MEDICAL TREATMENT FOR CRIMINAL SANCTIONS. (a) Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years, or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years, or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[2] The defendant was also charged, in count one of the information, with possession of narcotics with intent to sell in violation of General Statutes § 19-480a, now § 21a-278. The trial court dismissed this count pursuant to the defendant's motion for judgment of acquittal. The two possession of narcotics charges were counts two and three of the information.

stitution.[3] We are persuaded only by the double jeopardy claim.

On August 9, 1981, at approximately 3:30 a.m., members of the Bridgeport police department conducted a raid at an after hours club. While in the club, a police detective observed the defendant place a black pouch on the bar and begin to walk toward an exit. The defendant was then stopped and asked to return to the bar where he had left the pouch. The detective inspected the bag and found a yellow spoon with a white powder residue, two glassine envelopes, a plastic bag and a film container all of which held a white powder substance. The defendant was arrested for possession of narcotics.

At trial, the state offered Charles Reading, a state toxicologist, to testify as to the nature of the substances that were contained in the black pouch. Reading was qualified as an expert in the field of toxicology and described the testing procedures used to determine the contents of the pouch. On the basis of the test results, he concluded that the residue on the spoon and the substances in the plastic bag and in the film container were cocaine, and that the powder in one of the glassine envelopes was heroin.

I

The defendant claims, for the first time on appeal, that he was denied the right to confront witnesses against him as guaranteed by the sixth and fourteenth amendments to the United States constitution and arti-

---

[3] Although the Connecticut constitution contains no specific double jeopardy provision, the due process guarantees of article first, § 8, have been held to include such a protection. *Kohlfuss* v. *Warden,* 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962).

cle first, § 8, of the Connecticut constitution.[4] The defendant's claim relates to the testimony of Reading concerning the testing procedures used upon the substances in the black pouch. He argues that, because Reading did not perform the actual tests on the substances and did not provide the court with adequate indicia of reliability for his statements, his testimony consisted of inadmissible hearsay evidence which deprived the defendant of his right to confront the witnesses against him. We do not agree because the defendant, by his failure timely to raise such an objection at trial, waived his confrontational rights.

At trial, after Reading testified that the contents of the bag were indeed narcotics, the state concluded its questioning. At no time during the direct examination did the defense counsel object to Reading's testimony. Defense counsel initiated cross-examination by confirming that Reading did not perform the tests himself. At that point, the trial court asked the state's attorney if he intended to offer the toxicological report into evidence. The state's attorney responded, "I had intended to offer it to [sic] the last witness." After defense counsel concluded cross-examination, the state rested its case. After a brief recess, the defendant also rested.

At the close of the evidence, the defendant for the first time objected to Reading's testimony by way of his motion for judgment of acquittal. Claiming that the "whole evidence of the drugs should go out," he objected to the evidence on hearsay grounds. Defense

---

[4] Although it was not raised at trial, we will address this claim because "the Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *State* v. *King,* 187 Conn. 292, 309, 445 A.2d 901 (1982); *State* v. *Reardon,* 172 Conn. 593, 376 A.2d 65 (1977); see *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

counsel recognized that he had failed to object during the examination of Reading, but explained the omission by his misunderstanding of the statement of the state's attorney that he intended to introduce the report through the "last" witness. Defense counsel, as well as the trial court, interpreted the statement to mean that the report would be offered through another witness. Despite this misinterpretation, the court denied the defendant's motion.

Even if it were assumed that the testimony in question was hearsay,[5] the admission of hearsay evidence does not necessarily violate the confrontation clause. In *California* v. *Green,* 399 U.S. 149, 155–56, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970), the United States Supreme Court noted that "[w]hile it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. . . . Merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied." See note, "Confrontation and the Hearsay Rule," 75 Yale L.J. 1434, 1436 (1966); *State* v. *Brigandi,* 186 Conn. 521, 531, 442 A.2d 927 (1982); *State* v. *Cosgrove,* 181 Conn. 562, 577, 436 A.2d 33 (1980); McCormick, Evidence (3d Ed. 1984) § 252.

In *State* v. *Cosgrove,* supra, 578, we declared that where hearsay evidence is offered, the proper focus of

---

[5] Because of the defendant's failure timely to object it is not necessary to address the issue of whether or not the admission of Reading's testimony, without the accompanying toxicological report, was inadmissible hearsay. See Practice Book §§ 288, 3063; *State* v. *Sinclair,* 197 Conn. 574, 500 A.2d 539 (1985); *Keating* v. *Glass Container Corporation,* 197 Conn. 428, 497 A.2d 763 (1985).

the court's concern is whether there are adequate "indicia of reliability" to justify placing such evidence before the jury. See *Mancusi* v. *Stubbs,* 408 U.S. 204, 213, 92 S. Ct. 2308, 33 L. Ed. 2d 293 (1972); *Dutton* v. *Evans,* 400 U.S. 74, 81, 91 S. Ct. 210, 27 L. Ed. 2d 213 (1970). Further, we noted that any such hearsay must " 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement.' " *State* v. *Cosgrove,* supra, 571; *California* v. *Green,* supra, 161. We concluded that the admission of a toxicological report, prepared in the regular course of laboratory business, containing statements by a testing chemist who fails to testify, does not violate the defendant's right to confront and cross-examine the witnesses against him, provided that the report is introduced through a witness who can furnish a basis for its reliability.

The gravamen of the defendant's claim is not that the failure to call the chemists who actually performed the tests rendered Reading's testimony inadmissible or denied the defendant his right to confront the witnesses against him. The defendant recognizes that *Cosgrove* makes such an argument untenable. He argues, rather, that his confrontational rights were violated because Reading's testimony did not establish "adequate indicia of reliability," as is necessary for admission under *Cosgrove.* He cited the state's failure to mention the names of the testing chemists and to prove that Reading supervised the testing chemists in analyzing the substances seized from the defendant, two components of reliability that were present in *Cosgrove.* The defendant does not contend that the state had to call further witnesses against him. He argues merely that the state's ambiguous statement induced him prematurely to terminate his cross-examination of Reading, in the mistaken belief that another witness would provide the needed assurances of reliability.

Throughout the examination of Reading, the defendant never objected to the testimony as to the narcotic content of the substances. As he claims, the defendant may have presumed that the subsequent admission of the toxicological report, through a witness who would provide the necessary foundation and assurances of reliability, would render any hearsay objection ineffective under the rule articulated in *Cosgrove*. See *State v. King*, 187 Conn. 292, 309, 445 A.2d 901 (1982); *State v. Reardon*, 172 Conn. 593, 599, 376 A.2d 65 (1977). However, the mere fact that Reading's testimony might have been inadmissible hearsay does not inexorably lead to the conclusion that the defendant's confrontational rights were violated. The primary interest secured by confrontation is "the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965); *State v. Randolph*, 190 Conn. 576, 591, 462 A.2d 1011 (1983).

The defendant's right to cross-examine Reading was not restricted. In fact, the defendant elicited from this witness that he did not actually test the drugs. The jury could reasonably have drawn inferences, unfavorable to the state, from that testimony. The defendant did not inquire as to who actually performed the tests, nor whether the tests were performed according to standard toxicological practice. Further, he chose not to cross-examine Reading extensively.

Therefore, the essence of the defendant's claim is that the state failed to provide the necessary assurances of reliability for Reading's testimony, as *Cosgrove* requires. Because of this alleged deficiency, the defendant should have objected to the state's initial questioning of Reading on the narcotic content of the substances. A timely objection based on the state's failure to lay a proper foundation for his opinion should

have been made before Reading answered the question. See *Hackenson* v. *Waterbury*, 124 Conn. 679, 683, 2 A.2d 215 (1938); *Snow* v. *Howard Motors, Inc.*, 3 Conn. Cir. Ct. 702, 706–707, 223 A.2d 409 (1966). Because the defendant failed to raise a timely objection, the trial court was never alerted as to the constitutional problems resulting from the admission of the testimony. Had the defendant objected, the state might have been able to establish the necessary assurances of reliability to dispense with the requirement of confrontation. See *United States* v. *Helmel*, 769 F.2d 1306, 1317 (8th Cir. 1985); *United States* v. *Gibbs*, 739 F.2d 838, 847 (3d Cir. 1984) (en banc), cert. denied, 469 U.S. 1106, 105 S. Ct. 779, 83 L. Ed. 2d 774 (1985). The lack of evidence on the record as to the assurances of reliability was directly traceable to the defendant's failure seasonably to object. *United States* v. *Gibbs*, supra, 848. The defendant also could have requested a voir dire examination of Reading in order to determine whether he could provide the necessary assurances of reliability. Because the defendant failed to invoke his right to such an inquiry or to make a timely objection, Reading's testimony was properly before the jury. "Where hearsay evidence is admitted without objection, such evidence may be given such weight as the trier of fact deems that it is worth." *State* v. *Boyd*, 178 Conn. 600, 604, 424 A.2d 279 (1979); *Cutlip* v. *Connecticut Motor Vehicles Commissioner*, 168 Conn. 94, 98, 357 A.2d 918 (1975); *Pluhowsky* v. *New Haven*, 151 Conn. 337, 343, 197 A.2d 645 (1964).

Although he might have been induced to curtail his cross-examination of Reading because of his reliance on the state's ambiguous statement, the defendant should have moved to strike the testimony when the state closed its case, as it was then clear that there would be no additional witnesses called. See *Kowalewski* v.

*Mutual Loan Co.,* 159 Conn. 76, 78, 266 A.2d 379 (1970); *State* v. *Perelli,* 125 Conn. 321, 327, 5 A.2d 705 (1939); *Snow* v. *Howard Motors, Inc.,* supra, 707.

Had the defendant wanted to challenge the toxicological report, his confrontational rights "were adequately protected by the available procedures for pretrial discovery, Practice Book, 1978, §§ 741, 745, and subpoenaing of the witness[es] during trial. See, e.g., *People* v. *Gower,* 42 N.Y.2d 117, 121, 366 N.E.2d 69 [397 N.Y.S.2d 368 (1977)]; *State* v. *Walker,* 53 Ohio St. 2d 192, 197, 374 N.E.2d 132 [1978]." *State* v. *Cosgrove,* supra, 581–82. The admission of Reading's testimony did not deprive the defendant of his right to confront the individuals who actually performed the tests. The defendant, at the close of the state's case, could have moved to strike the expert's testimony on hearsay or confrontational grounds or could have sought a continuance to allow an opportunity to subpoena the individuals who actually performed the tests. Because he failed to avail himself of opportunities to exercise his confrontational rights even after his initial misunderstanding concerning the statement of the prosecutor had been dispelled, the defendant cannot complain that he was deprived of the right to confront the witnesses against him.

## II

The defendant next argues that the trial court, by convicting him of two counts of possession of narcotics for the simultaneous possession of heroin and cocaine, punished him twice for the same offense and thereby violated the double jeopardy provision of the United States constitution. The defendant was charged and convicted under General Statutes § 19-481 (a), which imposes liability on "[a]ny person who possesses or has under his control any quantity of any narcotic substance . . . ." The express language of the statute does not

address whether or not a person can be punished for multiple violations based on the simultaneous possession of different narcotic substances.[6]

The double jeopardy clause of the fifth amendment to the federal constitution protects not only against multiple trials but also against multiple punishments for the same offense. *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); *State* v. *Wright,* 197 Conn. 588, 592–93, 500 A.2d 547 (1985); *State* v. *Sharpe,* 195 Conn. 651, 654, 491 A.2d 345 (1985). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the . . . court from prescribing greater punishment than the legislature intended." *Missouri* v. *Hunter,* 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983). The issue, though essentially constitutional, becomes one of statutory construction. *State* v. *Madera,* 198 Conn. 92, 109, 503 A.2d 136 (1985).

" 'If a person steals four horses from the barn of another, all being of different color, it would not be competent to charge the thief with four different larcenies when the horses were all taken at the same time and place.' *Braden* v. *United States,* 270 F. 441, 443–44 (8th Cir. [1920]). 'Merely because one element of a single criminal act embraces two persons or things, a prosecutor may not carve out two offenses by charging the several elements of the single offense in different counts and designating only one of the persons or things in one count and designating only the other person or thing in the other count.' *Robinson* v. *United*

---

[6] The definition of "narcotic substance" in General Statutes § 19-443 (30), now § 21a-240 (30), expressly includes both cocaine and heroin.

*States,* 143 F.2d 276, 277 (10th Cir. [1944])." *State* v. *Cimino,* 33 Conn. Sup. 680, 684, 366 A.2d 1168 (1976).[7]

The proper double jeopardy inquiry when a defendant is convicted of multiple violations of the *same* statutory provision is whether the legislature intended to punish the individual acts separately or to punish only the course of action which they constitute. *Albernaz* v. *United States,* 450 U.S. 333, 337, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981); *Whalen* v. *United States,* 445 U.S. 684, 691, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980). Therefore, the question before us becomes whether the legislature in enacting § 19-481 (a) intended to authorize dual convictions for the simultaneous possession of cocaine and heroin.

Neither the language of § 19-481 (a) nor its legislative history indicates an intention to authorize multiple punishment for the simultaneous possession of more than one narcotic. The state, at argument, disclaimed the notion that separate packages of the same narcotic substance found in the possession of a person could be the basis for separate punishments under § 19-481 (a). The statute provides no suggestion of a contrary result for the simultaneous possession of separate packages of different narcotics. As the state conceded at argument, the statute at issue here is ambiguous in respect to whether separate punishments were intended for the possession of more than one kind of narcotic substance. It is a fundamental tenet of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. See *Rewis* v. *United States,* 401 U.S. 808, 812, 91 S. Ct. 1056, 28 L. Ed. 2d 493 (1971); *Bell* v. *United States,* 349 U.S. 81, 83, 75 S. Ct. 620, 99 L. Ed. 905 (1955); *United States* v.

---

[7] In *Braden* v. *United States,* 270 F. 441, 443–44 (8th Cir. 1920), a statute proscribing possession of "any of the aforesaid drugs" was held not to authorize separate sentences for each of four narcotic substances simultaneously possessed by the defendant.

*Noe,* 634 F.2d 860, 862 (5th Cir. 1981); *State* v. *Dupree,* 196 Conn. 655, 660, 495 A.2d 691 (1985). The "touch-stone" of this rule of lenity is "statutory ambiguity." *Bifulco* v. *United States,* 447 U.S. 381, 387, 100 S. Ct. 2247, 65 L. Ed. 2d 205 (1980). Unless a clear intention to fix separate penalties for each narcotic substance involved is expressed, the issue should be resolved in favor of lenity and against turning a single transaction into multiple offenses. *Ladner* v. *United States,* 358 U.S. 169, 178, 79 S. Ct. 209, 3 L. Ed. 2d 199 (1958); *Bell* v. *United States,* supra, 84. The defendant's conviction and sentence for possession of heroin, in the absence of a clearly discernible legislative intent for multiple convictions under § 19-481 (a), is barred by the double jeopardy clause.

There is error in the judgment on the additional possession of narcotics count, the judgment on that count is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion PETERS, C. J., and KLINE, J., concurred.

DANNEHY, J., dissenting. I cannot agree with part II of the decision. Section 21a-279 (a) of the General Statutes provides in part that "[a]ny person who possesses . . . *any narcotic substance* . . . may be imprisoned." (Emphasis added.) I believe that "any narcotic substance" as employed in the statute means any single narcotic substance. An individual in simultaneous possession of two different narcotic substances commits two separate statutory violations.

The rationale of the majority seems to be based on a series of concessions by the assistant state's attorney at oral argument. While a party's concessions at oral argument often facilitate our consideration of factual or procedural matters peculiar to the case at hand,

I do not find them particularly illustrative in determining legislative intent. Perhaps now, instead of responding fairly and honestly to questions posed at oral argument, parties will concede nothing.

I am not surprised that an exhaustive search through the legislative history of § 21a-279 fails to disclose "an intention to authorize multiple punishment for the simultaneous possession of more than one narcotic." The legislature rarely addresses directly such matters as the double jeopardy implications of its penal enactments. But more close to the point is the truism that men rarely make express what all assume as true. Certainly, the legislature would not have been so careless as to omit discussion of the double jeopardy clause if it could have foreseen how § 21a-279 would later be construed.

Finally, it is my opinion that the copious pages of our General Statutes devoted to the regulation and proscription of illegal substances reflect convincingly a strong legislative policy directed toward the complete suppression of narcotics such as heroin and cocaine. I cannot persuade myself that the legislature intended to treat the simultaneous possession of heroin, cocaine and any number of other narcotic substances as a single offense. Our statutory scheme represents a clear policy aimed at interdicting the flow of illegal narcotics. While the opinion of the court may not significantly impede law enforcement efforts in this area, I nonetheless do not find support for it in reason or policy. Accordingly, I dissent.

SANTANIELLO, J., dissenting. I agree wholeheartedly with the dissenting opinion of Justice Dannehy. I write separately to note that the statutory interpretation offered by the defendant in support of his double jeopardy claim leads to a bizarre result.

The defendant argues that the legislature intended that a person who simultaneously possesses both cocaine and heroin should be charged with only one criminal offense under General Statutes § 21a-279 (a). Section 21a-279, however, assesses different penalties for the possession of different types of narcotics. A person who possesses both cocaine as proscribed by § 21a-279 (a) and marihuana as proscribed by § 21a-279 (b) must be charged with two different criminal offenses. The majority's interpretation thus leads to an incongruous result: a person possessing both cocaine and heroin will be charged with one crime and a person possessing both cocaine and marihuana will be charged with two crimes. Also, the overall statutory scheme suggests that the legislature intended possession of a "narcotic substance" as proscribed by § 21a-279 (a) to be a more serious offense than possession of cannabis-type substances as proscribed by § 21a-279 (b) or (c). Thus, oddly, under the majority's interpretation, a person possessing cocaine and heroin will be subject to a lesser penalty than a person possessing cocaine and marihuana.

Because statutory interpretations which produce a more rational result are favored over those which produce bizarre or incongruous results; *State* v. *Parmalee,* 197 Conn. 158, 165, 496 A.2d 186 (1985); I cannot agree with the majority's analysis of the double jeopardy claim. I accordingly dissent.