## STATE OF CONNECTICUT *v.* TOMMY HAMMOND
## (AC 18702)

Lavery, Zarella and Spallone, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 24—officially released October 10, 2000

*Michael S. Alevy,* deputy assistant public defender, with whom was *Elizabeth M. Inkster,* assistant public defender, for the appellant (defendant).

*Robert M. Spector*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Elizabeth Bodine*, assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Tommy Hammond, appeals from the judgment of conviction, rendered after a jury trial, of possession of cocaine in violation of General Statutes § 21a-279 (a),[2] possession of heroin in violation of § 21a-279 (a), possession of heroin with intent to sell in violation of General Statutes § 21a-277 (a)[3] and possession of narcotics with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b).[4] On appeal, the defendant claims that (1) the trial court improperly denied his motion to suppress certain evidence seized as a result of a warrantless search and seizure that he claims was made without probable cause and (2) his conviction of two counts of possession of narcotics, both of which arose out of the same transaction, violates federal and

---

[2] General Statutes § 21a-279 (a) provides in relevant part: "Any person who possesses or has under his control any quantity of any narcotic substance . . . for a first offense, may be imprisoned not more than seven years . . . ."

[3] General Statutes § 21a-277 (a) provides in relevant part: "Any person who . . . possesses with the intent to sell or dispense . . . to another person . . . a narcotic substance, except as authorized in this chapter, shall be imprisoned . . . ."

[4] General Statutes § 21a-278a (b) provides in relevant part: "Any person who violates section 21a-277 or 21a-278 by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school, a public housing project or a licensed child day care center, as defined in section 19a-77, that is identified as a child day care center by a sign posted in a conspicuous place shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. . . ."

state proscriptions against double jeopardy. We affirm the judgment of the trial court.

The court found the following facts from the evidence adduced at the suppression hearing. On February 12, 1997, at approximately noon, Sergeant Herman Badger of the New Haven police department received an anonymous telephone call from a citizen complaining about a drug transaction taking place on the steps of a church at 246 Dixwell Avenue. Badger was stationed at the police substation on Charles Street around the corner from the church when he received the call. The caller indicated that two black males, one taller than the other, were selling drugs. The caller also described the color of the jackets that the two individuals were wearing. The caller was excited and upset by the fact that drug dealing was occurring on the church steps. Badger was familiar with the area and testified that it was an area known for frequent drug transactions.

Badger contacted Officer Richard Zasciurinskas by radio and dispatched him in his patrol car to the area of the church to look for the suspects described in the anonymous tip. At the time that Zasciurinskas was dispatched, he was a very short distance from the area in a marked patrol car. Badger, accompanied by Officer Samuel Bagley, left the substation and walked approximately 100 to 200 feet to the intersection of Charles Street and Dixwell Avenue. All three officers were in full uniform. Just prior to reaching the intersection, Badger and Bagley observed two black males standing in front of the church. One male was taller than the other, and their jackets matched the description given by the caller. The officers did not observe any conduct indicating that a drug transaction was taking place. The two men, however, fled when they saw the officers approach.

The two men walked across Dixwell Avenue and proceeded north, away from the officers. Badger

radioed Zasciurinskas and ordered him to stop the two individuals. Badger and Bagley then proceeded across Dixwell Avenue and followed the two men at a distance of approximately thirty to fifty feet. Zasciurinskas, who was traveling south on Dixwell Avenue, drove his car across the northbound lane of traffic in front of the suspects and partially blocked traffic. As Zasciurinskas exited his vehicle, the two suspects reacted by turning and proceeding south on Dixwell Avenue. Zasciurinskas yelled to them to stop. Zasciurinskas then observed one of them drop a bundle on the ground.

Zasciurinskas picked up the bundle, which consisted of nine glassine envelopes. On the basis of his almost twenty years of police experience, Zasciurinskas determined that the bags contained a possible narcotic substance. Badger and Bagley were about eight to ten feet from the two suspects, and Zasciurinskas was about ten to fifteen feet on the other side them.

The two men were detained by Badger and Bagley, and transported to the police substation. There, the contents of one of the nine envelopes tested positive for the presence of heroin. The defendant was placed under arrest. A search of the defendant incident to the arrest revealed a single plastic bag containing a white powder also believed to be a narcotic substance. At the substation, the defendant indicated that the single bag of cocaine was for his personal use.

The defendant pleaded not guilty to a four count substitute information charging him with possession of narcotics (cocaine) in violation of § 21a-279 (a) in count one, possession of narcotics (heroin) pursuant to §21a-279 (a) in count two, possession of narcotics (heroin) with intent to sell by a person who is not drug-dependent pursuant to General Statutes § 21a-278 (b) in count three and possession of narcotics (heroin) with intent to sell within 1500 feet of a school pursuant to § 21a-

278a (b) in count four. The jury found the defendant guilty on counts one, two and four. The jury returned a verdict of not guilty on count three, but guilty to the lesser included offense of possession of narcotics (heroin) with intent to sell pursuant to § 21a-277 (a). The court sentenced the defendant to serve a term of four years incarceration on the first count. The court merged the second count with the third count and sentenced the defendant on the third count to a term of twelve years to be served concurrently with the term imposed on the first count. The court also sentenced the defendant to serve a term of three years on the fourth count to run consecutive to the sentences imposed on all other counts. Thus, the court imposed a total effective sentence of fifteen years.

I

The defendant claims first that he was illegally seized on the basis of an anonymous tip received by the police because the tip lacked the requisite reliability to give rise to a reasonable and articulable suspicion. We disagree.

In justifying the seizure of a suspect, the "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* v. *Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). "The police officer's decision . . . must be based on more than hunch or speculation." *State* v. *Cofield*, 220 Conn. 38, 45, 595 A.2d 1349 (1991).

To determine whether the police had a reasonable suspicion that warranted the seizure of the defendant, we look to the totality of the circumstances surrounding the police action. *State* v. *Aillon*, 202 Conn. 385, 399, 521 A.2d 555 (1987). In the present case, the anonymous tip was telephoned to Badger, who was one of the

arresting officers. Badger determined that the caller was excited by and upset that a drug transaction allegedly had taken place on the steps of the church. The informant gave the relative heights of the two individuals who had engaged in the alleged drug transaction, described the colors of the coats the two individuals were wearing, and gave their location and indicated their race. Every aspect of the tip, with the exception of the fact that the two men were on the sidewalk in front of the church instead of on its steps, was verified by Badger and Bagley when they left the substation immediately after the call and proceeded the short distance to the scene.

The defendant relies on *Alabama* v. *White*, 496 U.S. 325, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990), and claims that the fact that the informant accurately described those facts is not sufficient corroboration to warrant a seizure. The defendant cites *White* for the proposition that an anonymous tip containing only facts and conditions that were in existence at the time of the tip is insufficient to support a reasonable and articulable suspicion, and that the tip must contain a prediction of future events to establish the reliability of the tipster. The defendant overstates the holding in *White*.

In *White*, the state received an anonymous tip that the suspect would be leaving a particular apartment at a specified time in a particular vehicle, that she would be going to a particular motel and that she would be in possession of cocaine. Id., 327. The United States Supreme Court found that the verification of those facts coupled with the verification of the destination of the defendant lent sufficient credibility to the anonymous tip to warrant a reasonable and articulable suspicion. Id., 332. The court stated: "What was important was the caller's ability to predict respondent's *future behavior*, because it demonstrated inside information—a special familiarity with respondent's affairs. The general public

would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. . . . When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." (Citation omitted; emphasis in original.) Id.

The defendant argues that because the tip in this case did not predict future events, it lacked, under *White*, the credibility to warrant a reasonable and articulable suspicion on the part of the police. The details relayed to the police in the present case were not predictive in nature and were facts available to any member of the public observing the subjects. *White*, however, also stands for the proposition that "[r]easonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture' . . . that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." (Citation omitted.) Id., 330.

In addition to the facts that were conveyed to the police by the informant, Badger testified that the informant seemed agitated or excited. Badger believed that the caller was offended that drug transactions allegedly were taking place on the steps of the church. The police knew the area to be one where drug transactions were routinely carried out. Additionally, the suspicions of the police were further raised when the two men, on seeing the police, turned, crossed the street and started to walk in a different direction. Finally, when Zasciurinskas drove his patrol car across the street and stopped,

the defendant again turned and walked away from the officer. Those factors, in addition to the tipster's information, which was confirmed by the police as to physical description, location and time, were sufficient to give the police reasonable and articulable suspicion sufficient to warrant a seizure of the defendant.

In *Illinois* v. *Wardlow*, 528 U.S. 119, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570 (2000), the United States Supreme Court held that police knowledge of an area as a high crime area and flight by a suspect were enough to raise a reasonable and articulable suspicion. In *Wardlow*, the defendant fled when he saw police vehicles converge on an area that was known for heavy drug trafficking. Id. Two police officers stopped the defendant, and one of them conducted a protective patdown search for weapons because the officer, on the basis of his experience, believed that there were usually weapons in the vicinity of drug transactions. Id., 675. The facts in the present case are far stronger than those in *Wardlow*. We conclude, therefore, from the undisputed facts in this case, that the court properly denied the defendant's motion to suppress.

II

The defendant claims next that his conviction of two counts of possession of narcotics pursuant to § 21a-279 (a) violates the federal and state prohibitions against double jeopardy. We disagree.

The state in its amended long form information alleged in the first count that the defendant "did possess or have under his control a quantity of a narcotic substance, to wit: cocaine, in violation of Section 21a-279 (a) of the Connecticut General Statutes." In the second count, the state alleged that the defendant "did possess or have under his control a quantity of a narcotic substance, to wit: heroin, in violation of Section 21a-279 (a) of the Connecticut General Statutes." The third count

specifically states that the defendant "did possess or have under his control with the intent to sell a quantity of a narcotic substance, to wit: heroin, in violation of Section 21a-278 (b) of the Connecticut General Statutes." The defendant, relying on our Supreme Court's decision in *State* v. *Rawls*, 198 Conn. 111, 502 A.2d 374 (1985), claims that when two identically classified narcotic substances are simultaneously possessed in the course of the same transaction, the proscriptions against double jeopardy decree that only one offense has been committed.

In *Rawls*, a police detective, during a raid of an after-hours club, noticed the defendant place a black pouch on the bar and walk toward the exit. Id., 113. The defendant was stopped, and the detective inspected the bag and found a yellow spoon with a white powder residue, two glassine envelopes, a plastic bag and a film container, all of which held a white powder substance. Id. The defendant was arrested and charged with two counts of possession of narcotics. Id., 111–12. The defendant was convicted on both counts and sentenced to seven years incarceration on each count, the terms of which were to run consecutively. Id., 112. The sentence was subsequently modified to run concurrently. Id. On appeal, the defendant claimed that by convicting him of two counts of possession of narcotics for the simultaneous possession of heroin and cocaine, the court punished him twice for the same offense and thereby violated the double jeopardy provision of the United States constitution. Id., 119.

The court in *Rawls* noted that "[t]he double jeopardy clause of the fifth amendment to the federal constitution protects not only against multiple trials but also against multiple punishments for the same offense. . . . With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the . . . court from prescribing greater pun-

ishment than the legislature intended." (Citations omitted; internal quotation marks omitted.) Id., 120. The court held that the defendant's conviction and sentencing on both possession counts violated the double jeopardy clause and set aside the conviction on one count. Id., 122. Thus, the court determined that the appropriate procedural form for the remand to the trial court when multiple punishments have been imposed for the same offense is to vacate the conviction and the sentence on the additional count.

Our Supreme Court in *State* v. *Chicano*, 216 Conn. 699, 706, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991), again addressed the issue of the appropriate form of the remand when multiple punishments have been imposed for the same crime. In *Chicano*, the state requested that only the sentence be vacated and that the conviction be allowed to stand. The court noted that this would be a departure from the practice of vacating the conviction and the sentence as was done in *Rawls*. The court stated that this procedure is "consistent with the procedure followed by the Second Circuit Court of Appeals; see *United States* v. *Roman*, 870 F.2d 65, 75–76 (2d Cir.), cert. denied, 490 U.S. 1109, 109 S. Ct. 3164, 104 L. Ed. 2d 1026 (1989); *United States* v. *Aiello*, 771 F.2d 621, 632–33 (2d Cir. 1985); but it is not consistent with the procedure followed by this court in prior cases involving successful double jeopardy claims. See, e.g., *State* v. *Rawls*, [supra, 198 Conn. 122]." *State* v. *Chicano*, supra, 722 n.18. Further, the court noted that although a majority of the federal circuit courts of appeal follow the procedure of vacating the conviction and the sentence on the lesser offense, the procedure of vacating only the sentence has found support in the Second Circuit and at least three other circuits. Id., 724 n.19.

The *Chicano* court concluded that the "Second Circuit's approach to this procedural issue adequately

addresses the dual concerns relating to a subsequent reversal of the remaining conviction and subjecting a defendant to the collateral consequences of multiple convictions." Id., 725. Thus, *Chicano* held that the proper procedure when multiple punishments have been imposed for the same offense is to vacate only the additional sentence and not the conviction.[5]

In the present case, the defendant stands convicted of two counts of possession of narcotics arising out of the same transaction. The defendant, however, was sentenced only on one count of possession of narcotics. This is consistent with the procedural form adopted in *Chicano*. Because there has been only one sentence on the possession counts, the double jeopardy claim must fail.

The court correctly merged the count alleging possession of heroin with the count alleging possession of heroin with intent to sell, as the former is a lesser offense included within the latter offense. That left the count alleging possession of cocaine, the count alleging possession of heroin with intent to sell and the count alleging possession of heroin with intent to sell within 1500 feet of a school. The remaining possession of narcotics (cocaine) conviction, for which the defendant was sentenced, did not merge with the count alleging possession of narcotics with intent to sell because the former was not a lesser offense included within the latter offense. The information specifically sets forth the manner in which the crimes were committed. The possession count is specifically described in the information as possession of cocaine. The count alleging

---

[5] *Rawls* stands for the proposition that simultaneous possession of heroin and cocaine in a single transaction cannot result in two convictions for possession. The dissent follows *Rawls* and concludes that "the possession of narcotics count (cocaine) and the possession of narcotics count (heroin) should have been merged together as one count of possession of narcotics." *Chicano* no longer requires the conviction to be vacated.

possession with intent to sell was described in the information as possession of heroin with intent to sell. Because it is, therefore, possible to commit the greater offense *in the manner described in the information or bill of particulars* without having first committed the lesser offense, the count alleging possession is not a lesser offense included within the greater offense of possession with intent to sell. See *State* v. *Fuller*, 56 Conn. App. 592, 599–600, 744 A.2d 931, cert. denied, 252 Conn. 949, 748 A.2d 298 (2000).

In this case, the defendant, therefore, cannot claim to have been sentenced twice for the same crime because he was not sentenced on both possession counts and did not thereby receive multiple punishments for the same offense.

The judgment is affirmed.

In this opinion SPALLONE, J., concurred.

LAVERY, J., dissenting. Although I agree with the majority that the trial court properly denied the defendant's motion to suppress, I respectfully dissent from the majority's conclusion that the defendant did not receive multiple punishments for the same offense.

The defendant was charged with the following offenses which are relevant to this dissent. In count one, he was charged with possession of narcotics (cocaine) in violation of General Statutes § 21a-279 (a). In count two, he was charged with possession of narcotics (heroin) in violation of § 21a-279 (a). In count three, he was charged with possession of narcotics (heroin) with intent to sell by a person who is not drug-dependent in violation of § 21a-278 (b).[1] The jury returned a

---

[1] In count four, the defendant was charged with and convicted of possession of narcotics (heroin) with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b). The defendant was sentenced on that count to three years, consecutive to all of the other counts. That count is not relevant to the issues here.

verdict of guilty on counts one and two. The jury acquitted the defendant on count three, but entered a guilty finding on the lesser included offense of possession of narcotics (heroin) with intent to sell in violation of § 21a-277 (a).

On count one, the defendant received a four year sentence. The court merged count two with count three, and on count three, the defendant received a twelve year sentence to run concurrently with the sentence on count one. I would hold, pursuant to *State* v. *Rawls*, 198 Conn. 111, 502 A.2d 374 (1985), that counts one and two would merge, and since possession of narcotics is a lesser offense included within count three (possession with intent to sell), there should be only one sentence. I would therefore vacate the four year concurrent sentence on count one.

"In accordance with *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), double jeopardy claims challenging the constitutional validity of convictions pursuant to two distinct statutory provisions are traditionally analyzed by inquiring whether each provision requires proof of a fact of which the other does not require proof. . . . We prefer a different form of analysis in the circumstances of this case, in which only one statutory provision is at issue.

"The proper double jeopardy inquiry when a defendant is convicted of multiple violations of the *same* statutory provision is whether the legislature intended to punish the individual acts separately or to punish only the course of action which they constitute. . . . *State* v. *Freeney*, 228 Conn. 582, 587, 637 A.2d 1088 (1994). The issue, though essentially constitutional, becomes one of statutory construction." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Garvin*, 242 Conn. 296, 304, 699 A.2d 921 (1997).

I will first consider whether the two charges of possession of narcotics, one of which alleged possession of heroin, the other of which alleged possession of cocaine, both should have been merged into one count of possession of narcotics. As previously noted, this issue is governed by *State* v. *Rawls*, supra, 198 Conn. 111. The majority's summary of *Rawls* is an accurate one, and I need not resummarize its facts and holding here. In short, *Rawls* concluded that the defendant's conviction of two counts of possession of narcotics for the simultaneous possession of heroin and cocaine punished him twice for the same offense, thus violating the double jeopardy provision of the United States constitution. Id., 122. Our Supreme Court in *State* v. *Chicano*, 216 Conn. 699, 706, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991), later sharpened *Rawls'* focus and concluded that in such a situation in which *Rawls* applies, only the sentence is to be vacated and not the conviction. Id., 724–25.

Similar to *Rawls*, the defendant here was convicted of two counts of possession of narcotics for the simultaneous possession of heroin and cocaine. Section 21-279 (a) prohibits the possession of narcotic substances. Cocaine and heroin are substances that are covered under the "narcotic substance" umbrella. General Statutes § 21a-240 (30). Under § 21-279 (a), one criminal act, possession of narcotics, embraces multiple types of specific drugs, and "[m]erely because one element of a single criminal act embraces two persons or things, a prosecutor may not carve out two offenses by charging the several elements of the single offense in different counts and designating only one of the persons or things in one count and designating only the other person or thing in the other count." (Internal quotation marks omitted.) *State* v. *Rawls*, supra, 198 Conn. 120. "Unless a clear intention to fix separate penalties for each nar-

cotic substance involved is expressed, the issue should be resolved in favor of lenity and against turning a single transaction into multiple offenses." Id., 122. I see no clear intention from the legislature to demarcate possession of cocaine and heroin, both of which are "narcotic substances" pursuant to § 21a-240 (30), as separate offenses. Accordingly, the conviction for possession of narcotics (cocaine) and the conviction for possession of narcotics (heroin) should have been merged as one count of possession of narcotics. Furthermore, since possession of narcotics in violation of § 21a-279 (a) is a lesser offense included within the offense of possession of narcotics with intent to sell in violation of § 21a-277 (a); see State v. Clark, 56 Conn. App. 108, 109 n.2, 741 A.2d 331 (1999); the possession of narcotics count properly merges into the count alleging possession of narcotics with intent to sell.

This case is distinguishable from State v. Hill, 237 Conn. 81, 675 A.2d 866 (1996), which contemplated a scenario different from the case here. In Hill, the defendant challenged on double jeopardy grounds his conviction of different offenses under different statutes, which arose out of the same transaction. Id., 98. As previously noted, this scenario requires an entirely different analysis focusing on whether each statutory provision requires proof of a fact that the other does not. Id., 100.

The defendant here was originally charged with possession of narcotics (heroin) with the intent to sell in violation of § 21a-278 (b), similar to the charge issued in Hill. Unlike the situation in Hill, however, the defendant in this case was convicted of possession of narcotics (heroin) with intent to sell in violation of § 21a-277 (a), and counts one and two are lesser offenses included within that charge. Accordingly, Hill and its analysis does not apply.[2]

---

[2] The Hill court concluded that it had no occasion to reconsider Rawls because it discussed a different analysis. "In Rawls, we concluded that

I therefore conclude that the defendant has been sentenced twice for the same crime in violation of the double jeopardy clause of the United States constitution. I would vacate the four year sentence given as a result of the conviction on count one because that conviction should merge with the conviction on count two, constitute a lesser offense included within count three and become one sentence arising out of the same transaction, that of twelve years.

For the foregoing reasons, I respectfully dissent.

multiple convictions were barred under § 21a-279 (a) because 'neither the language of [§ 21a-279 (a)] nor its legislative history indicates an intention to authorize multiple punishment for the simultaneous possession of more than one narcotic.' *State* v. *Rawls*, supra, [198 Conn.] 121. We have no occasion to reconsider our determination in *Rawls* in this case." *State* v. *Hill*, supra, 237 Conn. 102–103 n.27.

