# GEORGE M.[1] *v.* COMMISSIONER OF CORRECTION
## (AC 26961)

Schaller, McLachlan and Harper, Js.

Argued December 4, 2006—officially released May 8, 2007

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the defendant, the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

*Neal Cone*, senior assistant public defender, for the appellant (petitioner).

*Madeline A. Melchionne*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Henri Alexandre*, assistant attorney general, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, George M., appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner claims that the court improperly upheld the determination of the respondent, the commissioner of correction, that he was not eligible to earn good time credit as provided in General Statutes § 18-7a. We agree with the petitioner and reverse the judgment of the habeas court.

The relevant procedural facts are not in dispute. The state filed an information under docket number CR-96-94223, charging the petitioner with one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), one count of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) and two counts of risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21 (1). The state alleged that the conduct underlying the sexual assault charges occurred "on or about diverse dates in 1993 to 1995." The state alleged that the conduct underlying the risk of injury charges occurred "on diverse dates in 1993 through 1995."

The state filed an information under docket number CR-96-94222, charging the petitioner with one count of sexual assault in the third degree in violation of General

Statutes § 53a-72a (a) (1) and one count of risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21 (1). The state alleged that the conduct underlying these charges occurred "on or about diverse dates in 1993 through 1995."

The informations were joined for a trial by jury. In May, 1998, the petitioner was convicted of all of the crimes with which he was charged. On June 19, 1998, the trial court sentenced the petitioner to a total effective term of twelve years imprisonment, suspended after eight years, to be followed by three years of probation. This court affirmed the conviction following the petitioner's direct appeal.

The judgment mittimuses issued following the conviction did not provide a specific date for each offense. Instead, in the spaces designated for the "date of offense" for each offense listed in the mittimuses, the date range "1993-1995" was inscribed. It fell upon the respondent, upon receipt of the mittimuses, to calculate the petitioner's release date. The respondent selected January 1, 1995, as the offense date in evaluating the petitioner's eligibility to earn good time credit afforded by § 18-7a. That enactment provides in relevant part that "[a]ny person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983," may earn good time credit during the term of his imprisonment. General Statutes § 18-7a (c). In contrast, General Statutes § 18-100d provides: "Notwithstanding any other provision of the general statutes, any person convicted of a crime committed on or after October 1, 1994, shall be subject to supervision by personnel by the Department of Correction until the expiration of the maximum term or terms for which such person was sentenced." Thus, a determination of an offense date is significant; good time credit may be earned by prisoners who are imprisoned for offenses that occurred on or after July 1, 1983, but it cannot be earned by prisoners

who are imprisoned for offenses that occurred on or after October 1, 1994.

On October 21, 2004, the petitioner filed a motion to correct an illegal sentence. The petitioner sought clarification of his sentence, arguing that the offense dates were ambiguous and potentially subjected him to double jeopardy. On January 12, 2005, the trial court denied the motion.

On February 10, 2005, the petitioner filed a petition for a writ of habeas corpus. The petitioner challenged the respondent's decision to designate January 1, 1995, as the offense date for determining his eligibility to earn good time credit. The petitioner alleged that, because of the respondent's decision, he was deprived of his statutory right to earn good time credit and that, if the respondent had afforded him such right, he "would have completed his period of incarceration and been released to probation on or about April, 2004." The petitioner alleged that his "sentence and sentence calculation are illegal in that the sentence is ambiguous as to the date of offense," and that, for the purpose of determining his eligibility for good time credit, he "was not convicted of a crime committed on or after October 1, 1994 . . . ." (Citation omitted; internal quotation marks omitted.) The petitioner argued that the respondent's decision violated his right to a jury trial under the federal and state constitutions because "the respondent is impermissibly lengthening [his] sentence on the basis of a fact that was never either admitted by [him] or proven to a jury . . . ." (Citation omitted.) The respondent asserted as a defense that the petitioner "was sentenced for offenses which, at least in part, occurred on or after October 1, 1994," and, therefore, that the petitioner was not entitled to good time credit. The respondent asserted that it had calculated correctly the petitioner's term of confinement.

Following a hearing during which the habeas court heard testimony from a records specialist employed by the department of correction, the court issued a thorough memorandum of decision denying the petition. In addition to finding the procedural facts set forth previously, the court found: "The victims testified at the criminal trial that the conduct constituting the offense occurred several times a month between 1993 and the summer of 1995. . . . Testimony by a detective involved in the investigation indicated that the offenses occurred between September, 1993, and June, 1995." (Citation omitted.) The court also found that "[t]he offense date of January 1, 1995, was selected by the respondent to give the petitioner the earliest day of the 1995 calendar year." The court also noted that "the respondent in good faith attempted to determine the petitioner's controlling sentence and discharge date."

The habeas court noted that it was not improper for the state to have alleged that the petitioner committed the offenses at issue during the defined, yet broad, date range alleged in the informations. The court also recognized, however, that there were different reasonable ways in which to interpret the date range for the offenses listed on the mittimuses. Specifically, the date range could represent a time period during which a course of criminal conduct occurred, a period during which multiple instances of criminal conduct occurred or a period during which a single offense occurred, the time of which could not be determined with accuracy. The court stated that, without the benefit of additional information, "a determination of a specific offense date cannot be made with certainty from the [mittimuses themselves]." The court then reasoned, on the basis of its findings, as follows: "A review of the underlying record in this case shows that the date range utilized by the prosecuting authority is most accurately interpreted to mean that *multiple* instances of criminal conduct

occurred in the date range. Since the young victims could not identify *specific* dates on which the criminal conduct occurred, the state chose to charge the petitioner with offenses that occurred over a demonstrable date range. Additionally, because it was unknown exactly how many instances of the offenses occurred, the state essentially charged the petitioner with *one* instance of each offense. It is clear and undeniable, however, that the evidence at the underlying criminal trial shows that many instances of the offenses occurred, both prior to *and* after October 1, 1994. It follows therefrom that the petitioner in fact stands convicted for offenses committed on or after October 1, 1994. Consequently, the petitioner's controlling sentence is good time ineligible." (Emphasis in original.)

The court rejected the petitioner's claim that the rule of lenity applied and that the rule's application weighed against upholding the respondent's determination. The court reasoned that the rule of lenity did not apply because there was no ambiguity in the good time statutes or any risk that the petitioner was being subjected to harsher punishment as a result of an ambiguity in the statutes governing his punishment. The court also rejected the petitioner's claim that the jury did not find that he had committed any offense on or after October 1, 1994. Seemingly in contrast with its earlier determinations concerning the jury's verdict, the court reasoned that "the jury did find beyond a reasonable doubt that *all* six discrete offenses were, in fact, committed on or after October 1, 1994." (Emphasis in original.)

The petitioner argues that, on the basis of the jury's verdict and the evidence presented at trial, there is no basis upon which to conclude that any of the offenses for which he stands convicted necessarily occurred on or after October 1, 1994. Thus, the petitioner claims that the court improperly upheld the respondent's decision to use January 1, 1995, as the offense date. Further,

arguing that an ambiguity exists as to how the good time statutes apply to him, the petitioner claims that the rule of lenity applies and that the court should have directed the respondent to deem him eligible to earn good time credit. The respondent argues that the court properly determined that at least some offenses occurred in 1995 and that the court properly rejected the petitioner's lenity argument because "[i]neligibilty for statutory good time credit is not punishment nor does it subject the petitioner-appellant to double jeopardy."

The material facts presented to the habeas court are not in dispute and, as a determination of the petitioner's eligibility for good time credit presents a question of law, our review is plenary. See *Tyson* v. *Commissioner of Correction*, 261 Conn. 806, 816, 808 A.2d 653 (2002), cert. denied sub nom. *Tyson* v. *Armstrong*, 538 U.S. 1005, 123 S. Ct. 1914, 155 L. Ed. 2d 836 (2003).

The starting point of our analysis is a determination of the petitioner's offense date, as that date is dispositive in determining his eligibility for good time credit. General Statutes § 18-100d unambiguously indicates that a statutory right to earn good time credit is not afforded to persons sentenced to a term of imprisonment for crimes committed on or after October 1, 1994. *Velez* v. *Commissioner of Correction*, 250 Conn. 536, 544, 738 A.2d 604 (1999). The petitioner does not challenge the state's use of date ranges in the informations. The habeas court, having reviewed the record of the petitioner's criminal trial, noted that the young victims were unable to identify specific dates when the petitioner committed the charged offenses, that the victims were unable to specify with precision how many offenses the petitioner committed and that there was evidence from which the jury could find that the petitioner committed offenses both prior to and after October 1, 1994. On the basis of the record, the court

interpreted the informations to allege (1) that multiple instances of criminal conduct occurred during the date range and (2) that conduct constituting each offense occurred at some point during the date range. The record amply supports the court's assessment in this regard.

"The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial. . . . [That] the offense should be described with sufficient definiteness and particularity to apprise the accused of the nature of the charge so he can prepare to meet it at his trial . . . are principles of constitutional law [that] are inveterate and sacrosanct. . . . Moreover, [t]he state has a duty to inform a defendant, within reasonable limits, of the time when the offense charged was alleged to have been committed. The state does not have a duty, however, to disclose information which the state does not have. Neither the sixth amendment [to] the United States constitution nor article first, § 8 of the Connecticut constitution requires that the state choose a particular moment as to the time of an offense when the best information available to the state is imprecise." (Citations omitted; internal quotation marks omitted.) *State* v. *Vumback*, 263 Conn. 215, 221–22, 819 A.2d 250 (2003). The state alleged a specific date range during which the offenses were alleged to have been committed. Such a charging technique is not unusual and has been deemed reasonable in cases, such as the present case, in which the victims are of a tender age, there is a continuing nature to the offenses alleged and the capacity of the victims to recall specifics precludes the state from alleging events with exactitude. See, e.g., *State* v. *Hauck*, 172 Conn. 140, 150–51, 374 A.2d 150 (1976); *State* v. *Saraceno*, 15 Conn. App. 222,

234–37, 545 A.2d 1116, cert. denied, 209 Conn. 823, 824, 552 A.2d 431, 432 (1988).

In the present case, the jury returned a general verdict of guilty on all counts charged. Having reviewed the informations, the evidence presented to the jury, the court's jury charge and the jury's general verdict, we conclude that there is no basis, either in law or in logic, upon which one could conclude that the jury found that the petitioner necessarily committed any or all of the charged offenses on or after October 1, 1994. The jury did all that was asked of it; it returned a general verdict and said no more. Neither this court nor any other court has the ability to offer a different explanation of the jury's verdict without resort to speculation. Hence, we disagree with the habeas court insofar as it concluded that the jury found that all of the offenses were committed on or after October 1, 1994. Simply put, the date of offense for each of the petitioner's crimes falls within the date ranges alleged in the informations.

Having established what information may be known concerning the offense dates found by the jury, our difficulty in determining the petitioner's eligibility for good time credit becomes readily apparent. As a matter of law, a person sentenced to a term of imprisonment either *is* or *is not* eligible for such credit. We have examined the relevant statutory provisions; General Statutes §§ 18-7a (c) and 18-100d; mindful that "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *State* v. *Bletsch*, 281 Conn. 5, 16, 912 A.2d 992 (2007). The provisions are seemingly unambiguous and may be harmonized without any difficulty, yet the facts of this case present a latent ambiguity in their application. The dates of offenses underlying the petitioner's convictions encompass and include dates prior to and following October 1, 1994, the date before

which good time credit eligibility is afforded by § 18-7a (c) and on or after that date to which § 18-7a (c) does not apply by operation of § 18-100d.

Our review of the text of the statutes, their relationship to one another and their relationship to other statutes does not shed light on this issue. Further, our subsequent review of the legislative history of these statutes, the circumstances surrounding their enactment, the legislative policies they were designed to implement and their relationship to existing legislation and common-law principles governing the same general subject matter does not clarify their lawful application to the facts of this case. This leads us to the petitioner's contention that, by operation of the rule of lenity, the ambiguity in the application of the good time statutes should be resolved in his favor.

"It is a fundamental tenet of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. . . . The touchstone of this rule of lenity is statutory ambiguity." (Citations omitted; internal quotation marks omitted.) *State* v. *Rawls*, 198 Conn. 111, 121–22, 502 A.2d 374 (1985). "A penal statute must be construed strictly against the state and liberally in favor of the accused. . . . Criminal statutes are not to be read more broadly than their language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant. . . . [W]e . . . [reserve] lenity for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." (Citations omitted; internal quotation marks omitted.) *State* v. *Sostre*, 261 Conn. 111, 120, 802 A.2d 754 (2002). "Lenity thus serves only as an aid for resolving an ambiguity; it is not to be used to beget one. The rule comes into operation at the end of the process of construing

what [the legislature] has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." (Internal quotation marks omitted.) *State v. Lutters*, 270 Conn. 198, 219, 853 A.2d 434 (2004), quoting *Albernaz v. United States*, 450 U.S. 333, 342, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981).

Connecticut courts sparingly have applied the rule of lenity, often referred to as the rule of strict construction. The rule of lenity has been applied when an ambiguity exists as to whether a penal statute authorized separate punishments for the simultaneous possession of more than one prohibited item. See, e.g., *State v. Ruscoe*, 212 Conn. 223, 257–58, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990); *State v. Rawls*, supra, 198 Conn. 121–22. It has also been applied when an ambiguity exists as to the scope of conduct described in a criminal statute. See, e.g., *State v. Harrell*, 238 Conn. 828, 833–39, 681 A.2d 944 (1996) (holding that ambiguity surrounding definition of "murder" in capital felony statute must be construed in defendant's favor); *State v. Hinton*, 227 Conn. 301, 317–18, 630 A.2d 593 (1993) (holding that ambiguity as to whether doctrine of transferred intent should be applied to crime of attempt to commit murder must be resolved in defendant's favor). The rule of lenity applies to both penal statutes and sentencing guidelines. See 3 J. Sutherland, Statutes and Statutory Construction (6th Ed. Singer 2001) § 59.3, p. 131.

In support of his argument that the rule of lenity applies here, the petitioner relies on cases from other jurisdictions in which the rule was applied in the context of sentencing guidelines. See *United States v. Johnson*, 430 F.3d 383, 399 (6th Cir. 2005), cert. denied, 549 U.S. 829, 127 S. Ct. 48, 166 L. Ed. 2d 49 (2006); *Glynn v. State*, 868 So. 2d 1280, 1281 (Fla. App. 2004); *Cairl v. State*, 833 So. 2d 312, 314 (Fla. App. 2003). These cases resolve somewhat analogous issues involving the

interpretation of sentencing guidelines. Thus, they are not directly on point. The rule of lenity applies to the interpretation of ambiguous penal statutes, whether they delineate criminal conduct or impose punishment for such conduct. See *State* v. *Sostre*, supra, 261 Conn. 120 ("[c]riminal statutes are not to be read more broadly than their language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant" [internal quotation marks omitted]); *State* v. *Hinton*, supra, 227 Conn. 317 (rule of lenity requires court to resolve "doubts in the enforcement of a penal code against the imposition of a harsher punishment" [internal quotation marks omitted]). We must reach an issue of first impression in this state—whether the rule of lenity applies to good time statutes.

The parties have neither cited nor discussed any decisions from courts in other jurisdictions that have applied the rule of lenity to good time statutes. Our research has revealed that courts in several jurisdictions have applied the rule to such statutes. Notably, in *Maryland House of Correction* v. *Fields*, 348 Md. 245, 267, 703 A.2d 167 (1997), the Maryland Court of Appeals utilized the rule of lenity in its interpretation of a good time statute. The court stated: "While [the good time statute] does not establish punishment, it does set forth a significant procedure for shortening the punishment the inmate receives. We see no reason why the rule of lenity should not be utilized . . . ." Id. Later, in *Webster* v. *State*, 359 Md. 465, 481, 754 A.2d 1004 (2000), the Maryland Court of Appeals stated: "For the rule of lenity to be applicable, the statute being interpreted need not itself be a penal statute; what is required is that the interpretation given the statute have a significant impact on the sentence that the defendant receives." See also *Stouffer* v. *Staton*, 152 Md. App. 586, 608–609, 833 A.2d 33 (2003). Courts in other jurisdictions also have implicitly viewed good conduct statutes

as being in the nature of sentencing statutes and have applied the rule of lenity in their interpretation.[2] See *Faulkner* v. *District Court*, 826 P.2d 1277, 1278 (Colo. 1992); *State ex rel. Molero* v. *Blackburn*, 379 So. 2d 725, 727 (La. 1979); *Cao* v. *Stalder*, 915 So. 2d 851, 857–58 (La. App. 2005); *Wounded Shield* v. *Gunter*, 225 Neb. 327, 332, 405 N.W.2d 9 (1987); *Personal Restraint of Mahrle*, 88 Wash. App. 410, 415, 945 P.2d 1142 (1997).

Our Supreme Court recently reaffirmed the well settled principle that the rule of strict construction applies only to penal statutes. *State* v. *Skakel*, 276 Conn. 633, 675–76, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006). As relevant, the *Skakel* court held that statutes of limitation were not penal statutes to which the rule of strict construction applied. Id. In its analysis, the court delineated penal statutes as those that "define criminal conduct, establish the punishment to be imposed or otherwise burden defendants . . . ." Id., 676. The good time statutes at issue neither define criminal conduct nor establish the punishment for a crime. Yet, their application is closely related to punishment, for the right to earn good time credit may directly affect the number of days a person sentenced to a term of imprisonment must actually remain in prison. Because the application of these statutes to the petitioner potentially may reduce his sentence by some amount of time, the statutes reasonably must be said to be related to his punishment for the crimes of which he stands convicted. This being the case, we conclude that the interpretation of these statutes has the potential to burden defendants in such a manner that the statutes are penal in nature. We are

---

[2] Our research also has revealed that courts in some other jurisdictions have concluded that good time statutes are not penal in nature and have declined to apply the rule of lenity in their interpretation. See, e.g., *Sash* v. *Zenk*, 428 F.3d 132, 134–35 (2d Cir. 2005), cert. denied, 549 U.S. 920, 127 S. Ct. 277, 166 L. Ed. 2d 212 (2006); *Martinez* v. *Wendt*, Docket No. 3:03-Cv-028b-L (N.D. Tex. October 24, 2003) (unpublished opinion).

persuaded by the analysis employed by courts that have treated good time statutes in this manner and have applied the rule of lenity in their interpretation.

By resort to the rule of lenity, we will resolve the latent ambiguity in the statutory scheme, brought to light by the unique circumstances of the present case, in the petitioner's favor. Thus, we conclude that petitioner should be given the benefit of the doubt in terms of his eligibility for good time credit. Applying this rule, we interpret the statutory scheme such that the petitioner is eligible to earn credit in accordance with § 18-7a in such a manner as if the offense date occurred prior to October 1, 1994.

The judgment is reversed and the case is remanded with direction to render judgment determining the petitioner's release date in accordance with the interpretation of the law set forth in this opinion.

In this opinion the other judges concurred.