STATE OF CONNECTICUT *v.* GABRIEL SANCHEZ
(AC 18878)

Mihalakos, Zarella and Daly, Js.

Argued March 1—officially released June 20, 2000

*Richard Hustad Miller*, for the appellant (defendant).

*Joy K. Fausey,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Edward R. Narus,* senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Gabriel Sanchez, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the second degree in violation of General Statutes § 53a-102 (a).[1] On appeal, the defendant claims that (1) the trial court improperly admitted testimony regarding a threat that the defendant made against a witness and (2) the admission of the threat testimony was harmful error. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 7, 1994, at approximately 9 p.m., Victor Mason was exiting a restaurant in Hartford when the defendant, whom Mason had known for about five or six months, approached him. The defendant asked Mason if he had seen Troy Hunter, someone with whom Mason had had a prior confrontation. The defendant recruited Mason to help him find Hunter.

Mason informed the defendant that Hunter was at the apartment of Shari Gallagher, Mason's former girlfriend. Mason knew that Hunter had stayed at Gallagher's apartment on occasion. Mason and the defendant walked to Gallagher's apartment intending to confront

---

[1] General Statutes § 53a-102 (a) provides: "A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

Hunter. On the way, they passed Mason's uncle, Michael Fitch,[2] who joined them. All three men had a mutual dislike for Hunter. Gallagher observed them through her window prior to their entry into her apartment building.

The three men entered the apartment building and walked to the third floor. Mason and the defendant stood by Gallagher's door while Fitch stood in the hallway stairwell. Mason proceeded to knock on the door, but Gallagher refused to open it. The defendant then kicked the door open, and he and Mason entered the apartment and inquired of Gallagher as to the whereabouts of Hunter. Mason displayed a handgun in the apartment. Gallagher, who had her daughter beside her, said that Hunter was not there and told the men to leave or she would call the police. The men refused to leave, and Gallagher called out of her window to the building's security guards to call the police.

Mason, Fitch and the defendant then left the apartment building and went their separate ways. All three men were arrested a short time later, and Gallagher identified all three of them that same night.[3] On April 13, 1998, the defendant was found guilty of burglary in the second degree and on August 31, 1998, was sentenced to ten years incarceration, execution suspended after five years, with five years probation. This appeal followed. Additional facts will be discussed where necessary to the resolution of this appeal.

I

The defendant first claims that the court improperly admitted testimony regarding a threat that the defendant made against a witness. The defendant claims that this testimony was inadmissible evidence of other mis-

_____

[2] Fitch was Gallagher's friend and neighbor.

[3] The cases against Mason and Fitch were resolved without trials. Mason pleaded guilty to burglary in the first degree and risk of injury to a child. Fitch pleaded guilty to being an accessory to burglary in the second degree.

conduct because he did not initiate any inquiry that would have allowed its admission and because the evidence was more prejudicial than it was probative. We do not agree.

The following facts are necessary to the resolution of this issue. At trial, the state presented the testimony of Mason, a participant in the burglary. Mason had pleaded guilty to burglary in the first degree prior to the defendant's trial. During direct examination, Mason admitted that when he pleaded guilty in court, he told the judge that he did not possess or see a handgun during the burglary. On cross-examination, defense counsel questioned Mason regarding his reason for denying possession of the handgun. At the time he entered his plea, Mason attempted to explain that he was young and scared, and had never before been to court. Defense counsel challenged Mason by asking him whether he knew, regardless of his youth and inexperience, that it was wrong to lie to the judge. Mason responded that he "didn't like know exactly what to do in that predicament, so I was trying to save myself and my codefendants."

On redirect examination, the state attempted to rehabilitate Mason by asking whether, at the time he entered his plea, he had any fear of the defendant. Mason testified that he had a discussion with the defendant about pleading guilty in which the defendant told Mason to "cop out" or risk getting hurt. Mason explained that he understood "getting hurt" to mean that he would "get jumped." Mason testified that the conversation had influenced how he described to the judge what occurred during the burglary. During this portion of the state's redirect examination of Mason, the defendant objected three times, once on the ground of relevance, once claiming that the questioning was outside of the scope of cross-examination and once on both of those

grounds. The court overruled the objections without explanation.

"The basic purpose of redirect examination is to enable a witness to explain and clarify relevant matters in his testimony which have been weakened or obscured by his cross-examination. . . . The scope of redirect examination, however, is limited by the subject matter of cross-examination." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, 205 Conn. 638, 666, 534 A.2d 1199 (1987). "The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Oliver*, 48 Conn. App. 41, 51, 708 A.2d 594, cert. denied, 244 Conn. 930, 711 A.2d 729 (1998).

In this case, the court properly exercised its discretion in allowing the state to introduce evidence of the conversation between the defendant and Mason regarding Mason's guilty plea because the defense counsel opened the door to that evidence. The state did not elicit the testimony from Mason regarding the defendant's threat until redirect examination, and questions on this subject during the redirect examination were in response to the defendant's question on cross-examination as to why Mason had lied to the judge during his plea hearing. "The litigant who initially elicits testimony on a certain issue is said to have opened the door to rebuttal by the opposing party." (Internal quotation marks omitted.) *State* v. *Jones*, supra, 205 Conn. 666. Through its attack on Mason's credibility, defense counsel opened the door for the court to admit evidence

of other factors that influenced Mason's guilty plea, including the defendant's threat made to him.

Once the defendant opened the door to the admission of the threat evidence, the court properly determined that the evidence was more probative than prejudicial. Clearly, the conversation between Mason and the defendant was probative because it enabled Mason to further explain what motivated him to plead guilty in the manner that he did. Furthermore, defense counsel attempted to undermine Mason's credibility by suggesting that he knowingly lied to the court. Consequently, the state was justified in rehabilitating Mason. In doing so, the state properly questioned Mason further about what influenced his plea, which, in turn, resulted in testimony about the conversation between Mason and the defendant. This evidence was, therefore, probative of Mason's credibility.

The defendant contends that the evidence of the conversation between the defendant and Mason was prejudicial because the defendant's threat was almost identical to the offense being tried. We are not persuaded. The crime the defendant intended to commit in Gallagher's apartment was an assault, while the crime the defendant may have committed in his conversation with Mason was threatening. Also, the time, place and manner of the defendant's threat was not in any way similar to that of the assault he intended to commit. The defendant's threat was made to Mason in the courthouse lockup while the intended assault occurred in Gallagher's apartment. As a result, the defendant's threat made to Mason was different from the crime the defendant intended to commit upon entering Gallagher's apartment, and the defendant's contention, therefore, is without merit.

Finally, the defendant never requested a cautionary jury instruction on the use of the threat or other miscon-

duct evidence, nor did he make this request when the evidence was admitted or in his request for final instructions. "[W]here counsel does not choose to make . . . a [curative] request or to seek a mistrial, he presumptively does not view the remarks as so prejudicial that his client's right to a fair trial is seriously jeopardized." *State* v. *Falcone*, 191 Conn. 12, 23 n.13, 463 A.2d 558 (1983). Furthermore, the failure to request cautionary instructions weakens the defendant's claim of prejudice. See *State* v. *Conroy*, 194 Conn. 623, 628, 484 A.2d 448 (1984). We therefore conclude that the evidence of the conversation between the defendant and Mason was more probative than prejudicial and that the court did not abuse its discretion in admitting that evidence.

## II

The defendant next claims that the admission of the threat testimony was harmful error. We do not agree.

"[T]he burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant." *State* v. *McIntyre*, 242 Conn. 318, 329, 699 A.2d 911 (1997). "One line of cases states that the defendant must establish that it is more probable than not that the erroneous action of the court affected the result. . . . A second line of cases indicates that the defendant must show that the prejudice resulting from the impropriety was so substantial as to undermine confidence in the fairness of the verdict." (Internal quotation marks omitted.) *State* v. *McNair*, 54 Conn. App. 807, 814, 738 A.2d 689, cert. denied, 251 Conn. 913, 739 A.2d 1249 (1999).

Under either analysis, the admission of the threat testimony was not improper nor was there substantial prejudice such that confidence in the fairness of the verdict was undermined. As we concluded in part I of this opinion, the threat evidence was properly admitted at trial and was more probative than it was prejudicial.

The defendant's claim that the court's admission of threat evidence was a harmful error is, therefore, without merit.

The judgment is affirmed.

In this opinion the other judges concurred.