## STATE OF CONNECTICUT *v.* FRANTZ CATOR
### (SC 15922)

McDonald, C. J., and Borden, Palmer, Sullivan and Vertefeuille, Js.[1]

---

[1] Although Chief Justice McDonald reached the mandatory age of retirement before the date that this opinion was officially released, his continued participation on this panel is authorized by General Statutes § 51-198 (c). The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued September 28, 2000—officially released July 17, 2001

*Suzanne Zitser*, assistant public defender, for the appellant (defendant).

*C. Robert Satti, Jr.*, senior assistant state's attorney, with whom, on the brief, was *Jonathan C. Benedict*, state's attorney, for the appellee (state).

*Opinion*

MCDONALD, C. J. After a jury trial, the defendant, Frantz Cator, was convicted of felony murder in violation of General Statutes § 53a-54c,[2] murder in violation

---

[2] General Statutes § 53a-54c provides: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, aggravated sexual assault in the first degree, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (1) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (2) was not armed with a deadly weapon, or any dangerous instrument; and (3) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (4) had no reasonable ground

of General Statutes § 53a-54a (a),[3] conspiracy to commit murder in violation of General Statutes § 53a-48,[4] kidnapping in the second degree in violation of General Statutes § 53a-94 (a),[5] conspiracy to commit kidnapping in the second degree in violation of § 53a-48, and commission of a class A, B or C felony with a firearm in violation of General Statutes § 53-202k.[6] The defendant initially was sentenced to a total of fifty-five years imprisonment, suspended after fifty years, with five years of probation to follow. The state moved to correct the sentence on the grounds that the imposition of probation was illegal and that certain of the defendant's sentences should be merged. The trial court granted the motion. The total effective sentence after the correction was fifty years incarceration without any period of probation. The defendant appealed from the trial court's judgment to the Appellate Court, and this court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

[3] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

[4] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[5] General Statutes § 53a-94 (a) provides: "A person is guilty of kidnapping in the second degree when he abducts another person."

[6] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

On appeal, the defendant claims that the trial court improperly: (1) failed to determine whether there was a conflict in dual representation at the probable cause hearing; (2) admitted evidence of the defendant's prior, uncharged drug dealing; (3) failed to instruct the jury regarding the defendant's prior drug dealing; (4) modified the judgment of conviction after the defendant had begun serving his imposed prison term; (5) charged the jury that § 53-202k is a separate offense and encompasses accessory liability; (6) sentenced him to concurrent terms for two conspiracies and thereby violated the ban on double jeopardy; and (7) failed to provide him with formal notice that he had violated his probation stemming from a previous conviction. We disagree with all of the defendant's claims, with the exception of those regarding his sentence enhancement and his sentences for two conspiracies.[7]

At the defendant's trial, the state presented evidence that Desmond Hamilton, the defendant and the victim, Nathaniel Morris, all knew each other and had participated in the sale of drugs together. On May 10, 1996, on Laurel Court, a dead-end street in Bridgeport, the defendant and Hamilton had a discussion concerning both money that Hamilton owed the defendant and a gun of the defendant's that he had given to Hamilton approximately two weeks earlier. Also present during

---

[7] While this appeal was pending, the defendant moved in this court for permission to file a supplemental brief raising two additional claims: (1) "because all of the named coconspirators have now been acquitted of conspiracy to commit murder, the defendant's conviction for conspiracy to commit murder cannot stand"; and (2) "because he was specifically convicted of accessory to murder since the evidence presented by the state showed he was not the shooter, and all of the named individuals that he allegedly accessorized have been acquitted, his conviction for murder cannot stand." These issues necessarily involve matters that are not part of the record in this case, and it is appropriate that the defendant present those claims in the trial court first. We have, therefore, denied the defendant's motion for permission to file a supplemental brief. The defendant may, later, raise those claims in any appropriate postappeal trial court proceeding.

the conversation were the victim, and McWarren St. Julien. The defendant also questioned the victim about the whereabouts of the gun. During the conversation, the defendant became upset, began yelling and pulled out a Glock .40 handgun. Police officers subsequently came to the location of the conversation, but when they arrived the defendant was no longer there. Later that night, Hamilton called the defendant to attempt to explain that he did not know where the gun was located, and that he would never steal from the defendant. The defendant told Hamilton that he wanted him "to get everything straight."

On the following day, May 11, 1996, Hamilton again called the defendant, who told Hamilton that he was going to meet Hamilton at Hamilton's mother's house, and that the two men would go together to find the victim to learn what had happened to the gun. Later that evening, the defendant picked up Hamilton and they proceeded to 244 Olive Street in Bridgeport, where Hamilton, the victim, Tamara Addison and Terrance Addison lived. At 244 Olive Street, the defendant, the victim, St. Julien, Hamilton, Hamilton's mother, Tamara Addison and Terrance Addison were on the front porch of the house. There the defendant asked the victim about the whereabouts of his gun that had been the topic of the May 10 discussion. At or about the same time, Rodolphe St. Victor arrived at the house. The defendant and St. Julien then left the porch as St. Victor forcibly pulled the victim off the porch. As the defendant and St. Julien proceeded to enter a blue Oldsmobile parked in the driveway of the house, St. Victor grabbed the victim by the sleeve and said "Come on. [The defendant] wants to talk to you." St. Victor then forced the victim into the Oldsmobile, which the defendant then drove away. People at the house contacted the Bridgeport police out of concern for the victim's safety. The police came to the house and, after speaking with the

people there, left in search of the blue Oldsmobile. Later that evening, the defendant, St. Julien and St. Victor returned to 244 Olive Street in the blue Oldsmobile. The police arrived shortly thereafter and arrested the three occupants of the vehicle and recovered a gun from it. The defendant, St. Julien and St. Victor then were taken to the Bridgeport police station. Thereafter, St. Victor and three Bridgeport police detectives left the Bridgeport police station and St. Victor directed the police to Suggetts Lane, Bridgeport, where the victim was found, conscious but unable to speak, with a gunshot wound to the back of his neck. The police summoned medical personnel, who took the victim to Bridgeport Hospital, where he died. Tests conducted on the gun recovered from the car revealed that the bullet that killed the victim had been fired from it. The murder weapon was a Mac-10 automatic pistol modified with a shell catcher to retain spent bullet casings and a handle to prevent shaking when the gun was fired rapidly. This weapon belonged to the defendant, and he often carried it with him.

Additional facts and procedural history will be provided as needed.

I

The defendant first claims that the trial court improperly failed to determine whether he knowingly and intelligently waived his sixth amendment right to conflict free representation. The defendant claims that he preserved his right to appeal this issue by filing a motion to dismiss. Alternatively, he seeks reversal of his conviction under the plain error doctrine and under the standard of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[8] We assume without deciding that the

___

[8] *State* v. *Golding*, supra, 213 Conn. 239–40, states that a defendant can prevail on an unpreserved constitutional claim "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists

defendant properly preserved his claim in the trial court. We conclude, however, that there was no constitutional violation.[9]

The defendant's probable cause hearing was held on July 2, 1996. At this hearing, both the defendant and a codefendant, St. Julien, were represented by the same attorney, Joseph Mirsky.[10] Before the probable cause hearing, Mirsky participated in a meeting in chambers with the trial court, *Maiocco, J.*, at which time Mirsky made clear that both of his clients sought a probable cause hearing. At the outset of the hearing, Mirsky stated on the record: "I represent, yes, Your Honor, [the defendant] and [McWarren] [St.] Julien. And at this time I find no conflict of interest." The court then asked: "Sorry. Your client is what?" Mirsky replied: "I find no conflict of interest in representing these people at this time, sir." The hearing proceeded with Mirsky representing the defendant and St. Julien. Probable cause to try the defendant was found after the hearing.

On May 19, 1997, prior to the trial, Mirsky filed a motion to withdraw his appearance on behalf of the defendant on the ground that "there may or possibly could arise a conflict of interest . . . ." The trial court, *Ronan, J.*, granted the motion on May 28, 1997. Thereafter, the state filed a motion seeking to have the trial court consolidate the trials of the defendant, St. Julien and St. Victor. That motion was denied. The trial court, *Ronan, J.*, stated that he was erring "on the side of

and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." See *State* v. *Montgomery*, 254 Conn. 694, 711 n.26, 759 A.2d 995 (2000).

[9] We also assume without deciding that a violation of the defendant's rights at a probable cause hearing may serve to invalidate a subsequent conviction at trial. See *State* v. *Ortiz*, 252 Conn. 533, 548 n.15, 747 A.2d 487 (2000).

[10] St. Victor, who was represented by different counsel, waived his right to a probable cause hearing.

caution" in its decision, ruling that it was probable that the defendant, St. Julien and St. Victor would have antagonistic defenses at trial. The defendant's new attorney then filed a motion to dismiss on July 17, 1997, at the start of trial, claiming that the defendant's right to effective assistance of counsel had been violated because the trial court at the probable cause hearing failed to canvass the defendant concerning his waiver of his right to conflict free representation. The trial court, *Ford, J.*, reserved ruling on the motion until the conclusion of the state's case. The defendant subsequently filed another motion to dismiss the finding of probable cause based on his claim that he was denied the right to assistance of counsel at his probable cause hearing. The defendant's attorney did not present any arguments, evidence or testimony in support of the motion. The trial court denied this motion, finding that no conflict had existed at the probable cause hearing.

We first discuss the law governing the right to conflict free legal representation. "The sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution, guarantee to a criminal defendant the right to effective assistance of counsel. . . . Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest. . . . [O]ne of the principal safeguards of this right is the rule announced by this court that [a trial] court must explore the possibility of conflict . . . when it knows or reasonably should know of a conflict . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Crespo*, 246 Conn. 665, 685–86, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999).

"There are two circumstances under which a trial court has a duty to inquire with respect to a conflict

of interest: (1) when there has been a timely conflict objection at trial . . . or (2) when the trial court knows or reasonably should know that a particular conflict exists . . . . A trial court's failure to inquire in such circumstances constitutes the basis for reversal of a defendant's conviction." (Citations omitted; internal quotation marks omitted.) Id., 686.

Other than in these two circumstances, there is no affirmative, pervasive duty imposed on the trial court to inquire as to a potential conflict. Id. To impose such a duty would require the trial court to become intricately involved in the motives underlying litigants' trial strategies, and to engage in speculation about the actions to be taken at trial and their possible effects. *State* v. *Costa*, 155 Conn. 304, 309, 232 A.2d 913, cert. denied, 389 U.S. 1044, 88 S. Ct. 789, 19 L. Ed. 2d 837 (1967). Such an inquiry would risk an unwarranted intrusion into the attorney-client relationship. *State* v. *Crespo*, supra, 246 Conn. 697 n.28; *Festo* v. *Luckart*, 191 Conn. 622, 628, 469 A.2d 1181 (1983). In the absence of evidence to the contrary, this court may presume that the attorney has performed his ethical obligation to inform his client of any potential conflict. *State* v. *Crespo*, supra, 693 n.26.

In the absence of an affirmative duty by the trial court to inquire, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance" in order to obtain reversal of his conviction. *Cuyler* v. *Sullivan*, 446 U.S. 335, 348, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); *State* v. *Crespo*, supra, 246 Conn. 686; *Festo* v. *Luckart*, supra, 191 Conn. 631. "Thus, [i]t is not representation of more than one client which deprives a defendant of his constitutional right to effective assistance of counsel, it is representation of *clients with adverse interests*." (Emphasis in original; internal quotation marks omitted.) *State* v. *Henton*, 50 Conn. App.

521, 527, 720 A.2d 517, cert. denied, 247 Conn. 945, 723 A.2d 322 (1998).

"It is firmly established that a trial court is entitled to rely on the silence of the defendant and his attorney, even in the absence of inquiry, when evaluating whether a potential conflict of interest exists. . . . Absent *special circumstances*, therefore, trial courts may assume either that [the potentially conflicted] representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist. . . . An attorney [facing a possible conflict] in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest *exists or will probably develop in the course of a trial.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Crespo*, supra, 246 Conn. 696. The defendant's attorney is in the best position to determine if there is or exists the potential for conflict, and as an officer of the court, his declarations to the court are virtually made under oath. *State* v. *Webb*, 238 Conn. 389, 420, 680 A.2d 147 (1996). "The scope of a court's inquiry, or the necessity for such inquiry, however, depends on the circumstances, and a court need not necessarily elicit a waiver." *State* v. *Cruz*, 41 Conn. App. 809, 814–15, 678 A.2d 506, cert. denied, 239 Conn. 908, 682 A.2d 1008 (1996).

In the present case, the record contains two affirmative statements by Mirsky that a conflict of interest did not exist at the time of the probable cause hearing. Absent any reason to the contrary, the trial court may rely on the defendant's attorney's representation that there is no conflict, and it has no obligation to conduct any further inquiry into the subject. *State* v. *Crespo*, supra, 246 Conn. 696. Because the court had no obligation to inquire, the defendant is required to show actual harm. See *Cuyler* v. *Sullivan*, supra, 446 U.S. 348. We

conclude that the record does not establish that the defendant suffered actual harm.

The record contains no evidence that an actual conflict between the defendant and St. Julien existed at the time of the probable cause hearing. Neither the defendant nor St. Julien pointed to the other. The defendant's statement to the Bridgeport police, which was introduced at the probable cause hearing, stated that an unnamed fourth person, not St. Julien, shot the victim. At no time did the defendant implicate St. Julien. St. Julien had not given any statement, and at no time did St. Julien implicate the defendant as the perpetrator. After careful review of the probable cause hearing transcript, we conclude, as the trial court did, that there was no actual conflict between the defendant and St. Julien.[11]

Because the defendant has been unable to show that he was actually harmed by Mirsky's joint representation, we conclude that there was no violation of the defendant's right to conflict free representation. In the absence of any indication that the defendant was actually harmed, his claim of ineffective assistance of counsel must fail.[12]

---

[11] The state presented evidence at the hearing that St. Victor forced the victim off the porch at 244 Olive Street into an automobile being driven by the defendant, in which St. Julien was a passenger. After the car drove off, the police were called and, when the car returned without the victim, the police searched the vehicle and found a gun. St. Victor then led the police to the victim, who was still alive, but who later died of a gunshot wound to the neck. A witness to the kidnapping testified that St. Victor stated to the victim that "[the defendant] wants to talk to you." The defendant gave a statement to the police in which he claimed that someone other than St. Julien, St. Victor or himself was the one who had shot the victim. The defendant argued that the gun as yet had not been tested to confirm it was the murder weapon, and that there was no evidence connecting either the defendant or St. Julien to the murder.

[12] Regarding the defendant's claim of plain error, as is more fully discussed in part II B of this opinion, we have repeatedly held that the doctrine of plain error can be used only in "extraordinary situations" to reach obvious errors. *State* v. *Stephens*, 249 Conn. 288, 291, 734 A.2d 533 (1999); *State* v. *Niemeyer*, 55 Conn. App. 447, 457–58, 740 A.2d 416, cert. granted on other

## II

The defendant next makes two claims concerning evidence of his prior misconduct that was admitted by the trial court. First, he argues that it was improper for the trial court to admit such evidence. In the alternative, he argues, under the plain error doctrine, that the trial court had an obligation, sua sponte, to issue a limiting instruction in regard to the prior misconduct evidence and testimony. We disagree.

The following facts are relevant to this claim. Two witnesses for the state, William Kamper and Hamilton, testified that they knew the defendant from working for or with him selling drugs. Hamilton also testified that he knew St. Victor from selling drugs with him, and that the victim also had sold drugs with Hamilton, the defendant and St. Victor. Hamilton testified that on the day before the murder, the defendant was upset enough about money and his missing gun, which he believed the victim had, to pull a gun.

### A

"[T]he law regarding admission of prior criminal acts is clear. As a general proposition, evidence of guilt of other crimes, because of its prejudicial nature, is inadmissible to prove that a defendant is guilty of the crimes with which he is charged. . . . Such evidence is admissible for other purposes, however . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Ali*, 233 Conn. 403, 427, 660 A.2d 337 (1995). However, "[i]t is well settled that evidence of prior misconduct

grounds, 252 Conn. 916, 747 A.2d 517, cert. granted on other grounds, 252 Conn. 917, 744 A.2d 437 (1999). Claimed errors must be so harmful that "manifest injustice" would result if the error were not corrected. *State* v. *Robertson*, 254 Conn. 739, 760, 760 A.2d 82 (2000). Because we concluded that there has been no actual harm to the defendant caused by the joint representation, we must necessarily conclude that plain error has not been established in this regard.

is admissible for the limited purposes of showing intent, an element in the crime, identity, malice, motive or a system of criminal design." *State* v. *Taylor*, 239 Conn. 481, 501, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997).

"Uncharged misconduct evidence must satisfy a two part test in order to be admitted as an exception. The evidence must be relevant and material to at least one of the claimed exceptions and its probative value must outweigh its prejudicial effect." (Internal quotation marks omitted.) *State* v. *Wargo*, 53 Conn. App. 747, 760, 731 A.2d 768 (1999), aff'd, 255 Conn. 113, 763 A.2d 1 (2000). "It is axiomatic that the probative value of evidence of prior uncharged misconduct must outweigh the prejudicial effect of the other crimes evidence." *State* v. *Taylor*, supra, 239 Conn. 502.

"The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Sanchez*, 58 Conn. App. 382, 386, 754 A.2d 192 (2000). "Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . The court's decision is not to be disturbed unless [its] discretion has been abused, or the error is clear and involves a misconception of the law." (Citation omitted; internal quotation marks omitted.) *State* v. *Reid*, 254 Conn. 540, 550, 757 A.2d 482 (2000); see *State* v. *McClendon*, 248 Conn. 572, 585–86, 730 A.2d 1107 (1999).

"We have consistently permitted the introduction of evidence of acts of prior misconduct in order to establish a relationship between alleged coconspirators where one of the charges against the defendant is a conspiracy charge." *State* v. *Jones*, 46 Conn. App. 640,

652, 700 A.2d 710, cert. denied, 243 Conn. 941, 704 A.2d 797 (1997). Indeed, to prove the conspiracy charge, the state had the burden of proving that the the defendant and his codefendants, St. Victor and St. Julien, were "more than mere acquaintances and were engaged together in illegal activities." Id.

In this case, the defendant has not met his burden of showing that the evidence of prior misconduct should not have been admitted as evidence of a motive for the killing, the kidnapping or the conspiracy. Evidence of prior drug dealing itself is not necessarily unduly prejudicial. *State* v. *Oliver*, 48 Conn. App. 41, 52, 708 A.2d 594, cert. denied, 244 Conn. 930, 711 A.2d 729 (1998).

The cases relied on by the defendant are distinguishable from the present case. For example, in *State* v. *Faria*, 47 Conn. App. 159, 174, 703 A.2d 1149 (1997), cert. denied, 243 Conn. 965, 707 A.2d 1266 (1998), the prejudicial effect of evidence of consensual sex with a prostitute was determined to outweigh its probative value as it pertained to charges of sexual assault and kidnapping because the consensual sex "included considerable evidence that was extraneous to the charged crime." It is this kind of extraneous evidence that "may unduly arouse the jury's emotions, hostility or sympathy . . . ." (Internal quotation marks omitted.) Id. In this case, however, the evidence was not extraneous because the charges against the defendant included conspiracy, and the prior misconduct was evidence of the conspiracy. Additionally, the prior misconduct provided a motive for the kidnapping and the killing of the victim. The defendant and the victim were engaged in the sale of drugs, and because the defendant was displeased that his gun had not been returned, to the point of making threats at gunpoint, the defendant had a motive to harm the victim. Evidence of drug dealing or selling consistently has been admitted as a motive for killing or for a conspiracy charge. *State* v. *Jones*,

supra, 46 Conn. App. 652; see *State* v. *Cooper*, 227 Conn. 417, 425–27, 630 A.2d 1043 (1993) (evidence of prior drug possession admissible to establish that shooting was drug related); *State* v. *Jones*, 44 Conn. App. 338, 345–46, 689 A.2d 517, cert. denied, 240 Conn. 929, 693 A.2d 301 (1997) (evidence of drug dealing permitted to show relationship among alleged coconspirators where defendant charged with conspiracy to commit murder); *State* v. *Harris*, 43 Conn. App. 830, 836–37, 687 A.2d 544 (1996) (evidence of drug operation permitted to show relationship among various individuals where charge is conspiracy to commit murder). Furthermore, the evidence of drug dealing was unlikely to be unduly prejudicial because drug dealing is not the type of crime with which the defendant was charged. We previously have held that evidence of dissimilar acts is less likely to be prejudicial than evidence of similar or identical acts. *State* v. *Cooper*, supra, 427 (possession of marijuana not overly prejudicial when defendant charged with murder); see also *State* v. *Santiago*, 224 Conn. 325, 340, 618 A.2d 32 (1992) (possession of stolen weapon and murder are disparate acts of misconduct). We conclude, therefore, that the trial court did not abuse its discretion in admitting the evidence of the defendant's prior drug dealing.

## B

The defendant also claims that if the evidence was admitted properly, the trial court had an obligation, sua sponte, to give a limiting instruction to the jury as to the use of that evidence. We disagree.

As part of the instructions, the trial court stated to the jury: "Similarly, if some evidence was admitted for a limited purpose, then you must limit your consideration to the purposes indicated at that time. I have no present recollection that that situation exists in this case." The defendant concedes that he neither filed a

request to charge the jury regarding the misconduct evidence nor took exception to the trial court's failure to give a limiting instruction. The defendant seeks review of this issue under the doctrine of plain error.[13]

"We consistently have stated that review under the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Stephens*, 249 Conn. 288, 291, 734 A.2d 533 (1999); see *State* v. *Niemeyer*, 55 Conn. App. 447, 457–58, 740 A.2d 416, cert. granted on other grounds, 252 Conn. 916, 747 A.2d 517, cert. granted on other grounds, 252 Conn. 917, 744 A.2d 437 (1999). "Additionally, the claimed error must be both clear and harmful enough such that a failure to remedy the error would result in manifest injustice." *State* v. *Dwyer*, 59 Conn. App. 207, 216, 757 A.2d 597 (2000).

The defendant cites no authority for the proposition that the court, sua sponte, must give a limiting instruction under the circumstances of this case. It is well established in Connecticut, however, that the trial court generally is not obligated, sua sponte, to give a limiting instruction. *State* v. *Niemeyer*, supra, 55 Conn. App. 457–58. In *Niemeyer*, as in this case, the defendant did not request that a limiting instruction be given in regard to testimony concerning battered spouse syndrome. Id., 457. The Appellate Court held that the failure to give a limiting instruction does not rise to the "stringent

---

[13] Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

standard required for plain error review." Id., 458. We agree.

The cases relied on by the defendant to support his argument that the trial court, sua sponte, should have given a limiting instruction are factually and legally distinguishable from the circumstances of the present case. In *State* v. *Huckabee*, 41 Conn. App. 565, 573–74, 677 A.2d 452, cert. denied, 239 Conn. 903, 682 A.2d 1009 (1996), the Appellate Court, in ruling that the defendant had been entitled to limiting instructions, noted that the trial court had admitted voluminous evidence of prior misconduct, including escapes from a juvenile detention facility, the "street name" of the defendant, and the defendant's employment as a seller of drugs. That ruling is consistent with our line of cases that holds that the admission of evidence of a single incidence of misconduct is less prejudicial than evidence of multiple instances. *State* v. *Cooper*, supra, 227 Conn. 427; see *State* v. *Crumpton*, 202 Conn. 224, 230, 520 A.2d 226 (1987).

*State* v. *Ouellette*, 190 Conn. 84, 459 A.2d 1005 (1983), on which the defendant also relies, is a case in which this court found error in the trial court's failure to give limiting instructions. It is distinguishable from the present case for several reasons. In that case the defendant was charged with and convicted of risk of injury to a child. Id., 85. The defendant objected to the admission of evidence of prior sexual contact with a minor, and the trial judge indicated that he would give the jury limiting instructions, but he failed to do so. Id., 89–90.

We conclude that the trial court did not have an obligation sua sponte to give a limiting instruction as to the use of prior misconduct evidence, and we therefore decline to accord this claim plain error review.

## III

The defendant also claims that his convictions and sentences for murder and felony murder violate the prohibition against double jeopardy. We disagree.

The trial court found the defendant guilty of murder and felony murder and initially sentenced him to a total effective sentence of fifty-five years, suspended after fifty years, with a five year period of probation at the conclusion of that sentence. Later, pursuant to the state's motion to correct the sentence, the trial court merged the defendant's convictions for murder, and felony murder and imposed a total effective sentence of fifty years without a period of probation. The state argues that the corrected sentence, merging the convictions and vacating one of the sentences pursuant to *State* v. *Chicano*, 216 Conn. 699, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991), moots the defendant's claim. The defendant, however, claims that the trial court did not have the authority to correct a defendant's sentence once that defendant has begun serving the sentence.

Of course, a defendant cannot be punished twice for the same crime. When the trial court has imposed two sentences for the same offense, the appropriate action is to merge the two convictions and to vacate one of the sentences. Id., 725; see *State* v. *Montgomery*, 254 Conn. 694, 697 n.6, 754 A.2d 995 (2000); *State* v. *Hammond*, 60 Conn. App. 321, 331–32, 759 A.2d 133, cert. granted, 255 Conn. 907, 762 A.2d 911 (2000); *State* v. *Mills*, 57 Conn. App. 202, 203 n.3, 748 A.2d 318, cert. denied, 253 Conn. 914, 915, 754 A.2d 163 (2000).

In this case, the trial court had jurisdiction to correct the defendant's sentences pursuant to Practice Book § 43-22, which provides that "[t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed

in an illegal manner or any other disposition made in an illegal manner." "Both the trial court and this court, on appeal, have the power, at any time, to correct a sentence that is illegal." *State* v. *Daniels*, 207 Conn. 374, 387, 542 A.2d 306, after remand for articulation, 209 Conn. 225, 550 A.2d 885 (1988), cert. denied, 489 U.S. 1069, 109 S. Ct. 1349, 103 L. Ed. 2d 817 (1989); see *State* v. *Raucci*, 21 Conn. App. 557, 558, 575 A.2d 234, cert. denied, 215 Conn. 817, 576 A.2d 546 (1990).

A sentence that punishes a defendant twice for the same action violates the prohibition against double jeopardy. *State* v. *Chicano*, supra, 216 Conn. 706–707; see *State* v. *Raucci*, supra, 21 Conn. App. 559. Therefore, the original sentence imposed by the trial court was illegal, and the trial court had jurisdiction to correct the sentences pursuant to Practice Book § 43-22, which reflects the position stated in *State* v. *Daniels*, supra, 207 Conn. 354.

Furthermore, the trial court had jurisdiction to alter the sentences as a result of that court's initial imposition of the period of probation. Probation is not a legal sentence for murder. "General Statutes § 53a-29 prohibits the imposition of a period of probation or conditional discharge for a class A felony. Under General Statutes § 53a-35a, murder is defined as a class A felony . . . ." *State* v. *Lopez*, 197 Conn. 337, 353–55, 497 A.2d 390 (1985).

The defendant's reliance on certain of our language in *State* v. *Luzietti*, 230 Conn. 427, 431–34, 646 A.2d 85 (1994), is misplaced. At common law, once a defendant has begun serving his sentence, the trial court no longer has jurisdiction to alter its judgment "in the absence of a legislative or constitutional grant of continuing jurisdiction." Id., 431. In the present case, the trial court had jurisdiction to alter the sentence pursuant to Practice Book § 43-22, because otherwise the constitutional

prohibition against double jeopardy would have been violated.

It is clear in this case that the trial court at first imposed an illegal sentence. That court retained jurisdiction to correct that sentence pursuant to Practice Book § 43-22. Accordingly, it was proper for the trial court to merge the convictions for murder and felony murder pursuant to *Chicano.* Once this was done, the defendant's claim of double jeopardy became moot. *State* v. *Chicano,* supra, 216 Conn. 726. Accordingly, we reject the defendant's claim that his constitutional protection against double jeopardy was violated.

## IV

The defendant makes a number of claims with respect to his convictions of a class A, B or C felony with a firearm in violation of § 53-202k and sentence enhancement under § 53-202k.[14] He seeks to prevail under the standard of *State* v. *Golding,* supra, 213 Conn. 239–40. We conclude that the defendant has satisfied the four part *Golding* test: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id.; see *State* v. *Montgomery,* supra, 254 Conn. 711 n.26.

In *State* v. *Dash,* 242 Conn. 143, 146, 698 A.2d 297 (1997), this court determined that § 53-202k does not constitute a separate crime but, rather, provides for a sentence enhancement. Therefore, the defendant's convictions for violating this statute must be vacated. Id.

---

[14] See footnote 6 of this opinion.

The defendant claims with respect to the sentence enhancement that the trial court failed to instruct the jury as to the elements of § 53-202k. The state conceded at oral argument before this court that the trial court "never instructed the jury pursuant to . . . [*State*] v. *Velasco*, [253 Conn. 210, 225–29, 751 A.2d 800 (2000)]." In *Velasco*, this court determined that, although § 53-202k provides for sentence enhancement and is not a separate crime, a jury must find that the elements of that statute have been proved before the statute can be applied to enhance a sentence.

In this case, as the state concedes, the jury was not instructed as to the elements of § 53-202k. Without instruction as to these elements, the jury could not determine under *Velasco* whether the requirements for sentence enhancement under § 53-202k had been met. Id., 235–36. Accordingly, we need not address the other issues raised by the defendant.[15]

On remand, we instruct the trial court to vacate the § 53-202k convictions and the five year sentence enhancements that were imposed pursuant to those convictions and to proceed with a trial of the issue of § 53-202k in accordance with *State* v. *Velasco*, supra, 253 Conn. 249.[16]

V

The defendant also argues that his convictions for conspiracy to commit murder and conspiracy to commit kidnapping in the second degree violate the prohibition against double jeopardy. We agree.

In this case, after initially imposing sentence, the trial court modified the defendant's sentences to include

---

[15] This court decided recently that accessories as well as principal actors are subject to sentence enhancement under § 53-202k. See *State* v. *Davis*, 255 Conn. 782, 787, 772 A.2d 559 (2001).

[16] We express no opinion whether any defenses to bar a retrial would apply.

fifteen years for the conviction of conspiracy to commit murder and fifteen years for the conviction of conspiracy to commit second degree kidnapping. The sentences were to run concurrently, and the trial court stated at the hearing on the state's motion to correct the defendant's sentence that "the only action I'm taking is that the sentence is corrected and the mittimus ordered amended to show the sentences imposed as I did on the joinder of the capital—of the felony murder and the murder on the forty-five to serve and the conspiracy charges were running concurrent with that forty-five to serve."[17] The trial court did not, as the state claims, merge the defendant's two conspiracy convictions.

We must examine the two conspiracy convictions to determine if they violate the prohibition against double jeopardy. "Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) *State* v. *John*, 210 Conn. 652, 693, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989). "The test of whether two offenses are the same offense for double jeopardy purposes is whether each provision requires proof of a fact that the other does not." *State* v. *Jackson*, 28 Conn. App. 721, 732, 613 A.2d 846, cert. denied, 224 Conn. 904, 615 A.2d 1045 (1992).

Drawing inferences in the light most favorable to the state; *State* v. *Cassidy*, 236 Conn. 112, 136, 672 A.2d 899, cert. denied, 519 U.S. 510, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996); it is apparent that the kidnapping and murder of the victim stemmed from one course of

---

[17] The trial court did have the jurisdiction to correct the sentences pursuant to Practice Book § 43-22. See part III of this opinion.

conduct. It therefore was possible for the jury to have found only a single agreement.

A conspiracy to commit multiple offenses is, itself, a single offense. "The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute . . . . For such a violation, only the single penalty prescribed by the statute can be imposed." (Internal quotation marks omitted.) *State* v. *Ortiz*, 252 Conn. 533, 559, 747 A.2d 487 (2000). Because the facts point to only one agreement, the defendant cannot be subject to sentencing for two conspiracies. *State* v. *Rodriguez*, 44 Conn. App. 818, 824, 692 A.2d 846, cert. denied, 242 Conn. 902, 697 A.2d 363 (1997). Multiple, albeit concurrent, sentences are not proper and cannot stand in this case. *State* v. *Gould*, 241 Conn. 1, 24, 695 A.2d 1022 (1997).

Here, the defendant's convictions and sentences for conspiracy to commit kidnapping in the second degree and for conspiracy to commit murder are supported by evidence of a single agreement to kidnap and murder the victim. Accordingly, we conclude that the defendant's convictions and sentences for both conspiracy to commit kidnapping and conspiracy to commit murder violate the prohibition against double jeopardy. Therefore, we direct the trial court on remand to merge the two conspiracy convictions into one conviction, for conspiracy, and to sentence the defendant for that one conviction.

## VI

The defendant's final claim is that the trial court improperly revoked his probation stemming from a previous conviction. He argues that by failing to give him any notice that his probation status would be an issue at his sentencing hearing, the state violated his right to due process. The state counters that the defendant had

notice that his probation was subject to revocation and that he received a hearing on that matter.

The defendant acknowledges that this claim was not preserved at trial. Accordingly, he seeks to prevail under the *Golding*[18] standard and pursuant to the doctrine of plain error.[19] We conclude that the defendant's claim fails the third part of the four prong *Golding* standard, namely that any alleged constitutional violation must clearly exist and clearly deprive the defendant of a fair trial.

In order to address this claim, it is necessary to review the law concerning procedures for revocation of probation. It is well established that when a defendant's probation is revoked, certain due process protections must be afforded, including notice of the revocation and a hearing. See *State* v. *Patterson*, 31 Conn. App. 278, 311, 624 A.2d 1146 (1993), rev'd, 230 Conn. 385, 645 A.2d 535 (1994). The two alternative procedures for initiating probation revocation proceedings are set forth in General Statutes § 53a-32 and Practice Book § 43-29.[20] *State* v. *Patterson*, supra, 310–11. Practice Book § 43-29 specifically deals with instances where "the defendant is before the court or is being held in custody pursuant to that conviction . . . ."

"At [a probation revocation] hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation . . . shall be advised by the court that he has the right to retain counsel and, if indigent, shall be entitled to the

---

[18] See footnote 8 of this opinion.

[19] See part II B of this opinion.

[20] Practice Book § 43-29 provides in relevant part: "In cases where the revocation of probation is based upon a conviction for a new offense and the defendant is before the court or is being held in custody pursuant to that conviction, the revocation proceeding may be initiated by a motion to the court by a probation officer and a copy thereof shall be delivered personally to the defendant. . . ."

services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf." (Internal quotation marks omitted.) *State* v. *Davis*, 229 Conn. 285, 289–90, 641 A.2d 370 (1994).

We conclude that there is not any clearly existing error that clearly deprived the defendant of a fair trial. The defendant's claim that he did not have notice that his probation was subject to revocation is contradicted by the record. The state complied with the notice requirement of Practice Book § 43-29 by, prior to the sentencing hearing, providing the defendant with the presentencing investigation report prepared by the judicial branch's office of adult probation pursuant to Practice Book § 43-3 and General Statutes § 54-91a. The presentencing investigation report attached a "Violation of Proceedings," consisting of a motion dated November 10, 1997, made by the probation officer in compliance with Practice Book § 43-29.

The transcript of the defendant's sentencing hearing contains references to the presentencing investigation report and its contents by the defendant's counsel. At that hearing, the defendant's counsel stated: "I believe there may be a violation of probation warrant filed possibly in the G.A., but I do not represent him on that matter." The court answered: "Well, I have a violation here, which is determined by the fact that he was convicted in this case." The defendant's attorney then stated: "[T]hat matter was not assigned to me." The defendant's attorney requested to speak with "Mr. Tisdale," a person to whom the defendant's attorney referred as "the fellow in charge here."[21] After an interval, the defendant's attorney indicated on the record that he had spoken with Tisdale. Neither a transcript

---

[21] At the time in question, Preston Tisdale was the public defender for the judicial district of Fairfield.

of this conversation nor its substance appears in the record. The transcript of the sentencing hearing continues with the defendant's attorney arguing in support of a motion for acquittal upon the verdict of guilty, without any further mention of a violation of probation. The record therefore shows that the defendant had prior knowledge that revocation of his probation would be considered at his sentencing hearing.

Furthermore, the defendant had an opportunity to speak to the court when it was clear that his probation was subject to revocation. Both the defendant and his counsel declined the opportunity to speak, to raise any claims or to offer any witnesses or testimony. The defendant does not claim that a revocation of probation cannot be addressed on the same day as the defendant's sentencing proceedings.

It is clear from the record that the defendant received notice that his probation was subject to revocation, and that he had a hearing and an opportunity to speak and defend himself while represented by counsel, but did not speak in his own defense. Because the defendant was not clearly deprived of a fair hearing, we conclude that he cannot prevail on this claim because it fails the third prong of the *Golding* test.

Furthermore, "[i]t is universally held that the commission of a felony violates a condition inherent in every probation order." *State* v. *Roberson*, 165 Conn. 73, 77, 327 A.2d 556 (1973); *Payne* v. *Robinson*, 10 Conn. App. 395, 403, 523 A.2d 917 (1987), aff'd, 207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988). The conviction itself, and not the underlying conduct, constitutes a violation of probation. *Roberson* v. *Connecticut*, 501 F.2d 305, 308 (2d Cir. 1974) (criminal conviction more than enough to revoke probation); *State* v. *Daniels*, 248 Conn. 64, 83, 726 A.2d 520 (1999)(*McDonald, J.*, concurring)(convic-

tion more than sufficient basis for revocation of probation); *State* v. *Strickland*, 243 Conn. 339, 349, 703 A.2d 109 (1997) (substance of probation revocation indistinguishable from sentencing following criminal conviction).

In this case, the defendant was found guilty of multiple serious felonies. A conviction for *any one* of those crimes would be sufficient to constitute a violation of the conditions of his probation, and sufficient for the trial court to revoke his probation. See *State* v. *Roberson*, supra, 165 Conn. 77. Neither the defendant nor his attorney offered any explanation, testimony or evidence as to why the defendant's convictions should not constitute a probation violation, although they were afforded the opportunity to do so by the trial court. Indeed, the defendant has pointed to no evidence that he could have produced at a probation revocation hearing that conceivably could have led to a different outcome. The defendant makes no claim that it was not he who was convicted of multiple felonies, but another person, or that his convictions were not sufficient support for the revocation of his probation.

Also, the defendant cannot prevail on his claim under the plain error doctrine. As is more fully reviewed in part II B of this opinion, plain error is that which affects the "fairness and integrity . . . in the judicial proceedings"; (internal quotation marks omitted) *State* v. *Stephens*, supra, 249 Conn. 291; and results in a "manifest injustice" if not corrected. *State* v. *Dwyer*, supra, 59 Conn. App. 216. We conclude the defendant has not met the plain error standard.

The judgment is reversed in part, and the case is remanded to the trial court with direction to vacate the defendant's conviction under § 53-202k and for a trial on the issue of whether the defendant used a proscribed firearm in the commission of the underlying offense,

and with further direction to merge the defendant's convictions for conspiracy to commit murder and conspiracy to commit second degree kidnapping, and to impose one sentence for that conviction. The judgment is affirmed in all other aspects.

In this opinion the other justices concurred.