915 So.2d 851 (2005)
Duong CAO
v.
Richard L. STALDER, Secretary, Department of Public Safety and Corrections.
No. 2004 CA 0650.
Court of Appeal of Louisiana, First Circuit.
May 6, 2005.
*852 Duong Cao, Plaintiff-Appellant In Proper Person.
L. Bruce Dodd, Clinton, for Defendant-Appellee Richard Stalder, Secretary, Department of Public Safety and Corrections.
Before: PARRO, KUHN, and WELCH, JJ.
PARRO, J.
Duong Cao, an inmate in the custody of the Department of Public Safety and Corrections (DPSC), appeals a judgment of the district court that dismissed his petition for judicial review of a disciplinary matter after he had exhausted his administrative remedies. The issue raised in this *853 appeal is one of first impression: whether DPSC can impose a forfeiture of unearned or prospective "good time" as a sentence in a disciplinary matter. Concluding there is no statutory authority for such a forfeiture, we reverse the judgment and remand this matter to the DPSC with instructions.

FACTUAL AND PROCEDURAL BACKGROUND
In his petition for judicial review of a disciplinary matter, Cao said he was disciplined on February 22, 2002, for a rule infraction and was ordered to forfeit 30 days of good time. On February 27, 2002, he was again disciplined for a different offense and, as part of his sentence on this matter, was ordered to forfeit 180 days of good time. He appealed both disciplinary matters within the institution, using the administrative remedy procedure, and was denied relief at all steps of the process. On July 11, 2002, Cao filed a petition for judicial review of both disciplinary matters in the district court.
His petition was based on two grounds. First, he alleged he was not given a copy of the disciplinary reports before the hearings, as required by the DPSC rules, and therefore was denied the opportunity to prepare a defense. His motions for continuances to enable him to gather evidence were denied in both instances, and he was found guilty of the charges and sentenced. Therefore, he claimed he was denied due process. Second, he alleged the sentence on the second matter was excessive, because he did not have 180 days of good time at the time the sentence was imposed on February 27, 2002. The imposition of forfeiture of 180 days of good time thus amounted to a forfeiture of unearned, prospective good time, which he argues is not authorized by the applicable statutes and DPSC rules.
DPSC filed a motion to dismiss, claiming Cao could seek review of only one administrative remedy procedure in a petition for judicial review, and therefore, his petition should be dismissed. According to the record, a hearing on this motion was held before a commissioner, at which Cao moved to voluntarily dismiss his request for judicial review of the first disciplinary action. The record indicates this motion was granted, and oral arguments were heard concerning the second disciplinary action. DPSC then filed into the record a copy of the administrative remedy procedure for only the second disciplinary action, in which Cao was found guilty of defiance and aggravated disobedience.
Concerning that matter, the commissioner noted that the incident report filed in the administrative record showed the DPSC had tried to give Cao a copy of the report, but he had refused to sign for it. This evidence was sufficient to rebut his allegation that he was never offered a copy of the report. With reference to the excessive or illegal sentence claim, the commissioner found that DPSC acted within its authority, pursuant to duly promulgated rules, in ordering the forfeiture of 180 days of good time for the offenses of defiance and aggravated disobedience, "and the petitioner's contention that he cannot forfeit good time not yet earned is without merit."[1] The commissioner recommended to the district court that DPSC's disciplinary decision be affirmed and Cao's petition for judicial review be dismissed, with prejudice, at his cost.
Cao filed a traversal of the commissioner's recommendation, stating he did not dispute that DPSC had authority to order the forfeiture of up to 180 days of earned good time for any serious disciplinary rule infraction, but contending there was no *854 authority for DPSC to require an inmate to forfeit good time that was not yet earned. He argued that the language of LSA-R.S. 15:571.4(A), "Good time which has been earned by inmates ... shall not be forfeited except as provided ...," implies that the good time must already exist on the DPSC records in order to be forfeited. He also claimed the circumstances surrounding the purported attempt to give him a copy of the incident report showed the implausibility of the guard's statement that such an attempt was made.
After reviewing the evidence and the commissioner's recommendations, the district court signed a judgment dismissing Cao's petition, with prejudice, at his cost. This appeal followed.[2]

APPLICABLE LAW
Statutes that authorize the imposition of a penalty are to be strictly construed. Held v. Aubert, 02-1486 (La.App. 1st Cir.5/9/03), 845 So.2d 625, 637. The meaning of a law must first be sought in the language employed. If that is plain, it is the duty of the courts to enforce the law as written. David v. Our Lady of the Lake Hosp., Inc., 02-2675 (La.7/2/03), 849 So.2d 38, 46. Thus, interpretation of any statute begins with the language of the statute itself. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695 (La.6/29/01), 808 So.2d 294, 302. Words of a law must be given their generally prevailing meaning. LSA-C.C. art. 11. When the wording of a revised statute is clear and unambiguous, "the letter of it shall not be disregarded under the pretext of pursuing its spirit." LSA-R.S. 1:4. Rather, the law must be applied as written, and no further interpretation can be made in search of the intent of the legislature. LSA-C.C. art. 9; Trahan v. Coca Cola Bottling Co. United, Inc., 04-0100 (La.3/2/05), 894 So.2d 1096, 1102.
However, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. art. 12. Principles of judicial interpretation of statutes are designed to ascertain and enforce the intent of the legislature in enacting the statute. The fundamental question in all cases of statutory construction is legislative intent and the reasons that prompted the legislature to enact the law. Palmer v. Louisiana State Bd. of Elementary & Secondary Educ., 02-2043 (La.4/9/03), 842 So.2d 363, 367. The legislative history of a statute and related legislation can provide a particularly helpful guide in ascertaining the intent of a statute. Hoag v. State ex rel. Kennedy, 01-1076 (La.App. 1st Cir.11/20/02), 836 So.2d 207, 217, writ denied, 02-3199 (La.3/28/03), 840 So.2d 570.
The statutory and jurisprudential rules for statutory construction and interpretation apply equally well to ordinances, rules, and regulations. See Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir.1984). An interpretation used by the state administrative agency may be persuasive. Varner v. Day, 00-2104 (La.App. 1st Cir.12/28/01), 806 So.2d 121, 125.
The forfeiture provisions in effect at the time of the forfeiting conduct govern the computation of the forfeiture of good time. See Vincent v. State Through Dept. of Corrections, 468 So.2d 1329, 1332 n. 2 (La.App. 1st Cir.1985), writ denied, 472 So.2d 34 (La.1985). At the time of Cao's disciplinary offense, LSA-R.S. 15:571.4 stated:

*855 A. Determination shall be made by the secretary on a monthly basis as to whether good time has been earned by inmates in the department's custody. Good time which has been earned by inmates in the custody of the Department of Public Safety and Corrections, hereinafter referred to as the "department", shall not be forfeited except as provided in Subsection C of this Section.
B. (1) An inmate who is sentenced to the custody of the [department] and who commits a simple or aggravated escape from any correctional facility or from the lawful custody of any law enforcement officer or officer of the department, may forfeit all good time earned on that portion of his sentence served prior to his escape.[3]
(2) An inmate who has been returned to the custody of the department because of a violation of the terms of parole granted by the Board of Parole shall forfeit all good time earned on that portion of the sentence served prior to the granting of parole.
(3) An inmate who is sentenced to the custody of the department and who commits a battery on an employee of the [department] or any police officer as defined in R.S. 14:34.2 may forfeit good time earned on that portion of the sentence served prior to committing the battery of such person, up to a maximum of one hundred eighty days.
(4) In all other cases, forfeiture of good time may include up to a maximum of one hundred eighty days.
C. The department shall adopt rules to govern the imposition of the forfeiture of good time for the causes enumerated in Subsection B of this Section. The rules shall be adopted in accordance with the Administrative Procedure Act. The rules shall provide that an inmate has the right to a hearing on any charges which are punishable by the forfeiture of good time and that the inmate may waive that right. The rules shall be consistent with and shall implement the provisions of the constitutional, statutory, and jurisprudential requirements which govern the forfeiture of good time. (Footnote omitted).
Defiance and aggravated disobedience are "Schedule B" offenses under the DPSC's rules governing disciplinary matters. See La. Admin. Code 22 Pt. I:365(D) and (F). After a finding of guilt for a "Schedule B" offense, the DPSC may impose, among other penalties, "forfeiture of good time  up to a maximum of 180 days for each violation." La. Admin. Code 22 Pt. I:359(A)(2)(f).

ANALYSIS
The interpretation of a statute must begin with its provisions. Louisiana Revised Statute 15:571.4(A) addresses the forfeiture of good time which "has been earned" by inmates. This verb tense implies that only good time that has already been earned and accumulated can be forfeited, and an inmate cannot be left with a negative good time balance that has to be worked off before good time can again begin to accumulate.
Several other provisions of the statute provide that certain forfeitures can affect only good time earned on that portion of the sentence served prior to the offense for which the penalty is imposed. Louisiana Revised Statute 15:571.4(B)(1), which penalizes escape, allows the imposition of forfeiture of all good time earned on the portion of the sentence served prior to the *856 inmate's escape. In subsection (B)(2), which addresses parole violations, all good time earned on that portion of the sentence served prior to the granting of parole shall be forfeited. And in subsection (B)(3), which punishes battery on DPSC employees or other police officers, the forfeiture can affect good time earned on that portion of the sentence served prior to committing the battery, up to a maximum of 180 days. These subsections are all quite clear in stating that only good time that has already been earned up to a certain point in time can be forfeited. Subsection (B)(4), however, does not include that limitation, stating only that "[i]n all other cases, forfeiture of good time may include up to a maximum of one hundred eighty days."[4] Based on this comparison of the other subsections, the omission of the limiting language from subsection (B)(4) could be interpreted to imply that the forfeiture of prospective good time is an allowable penalty under this subsection. However, such an interpretation conflicts with the introductory paragraph's description of forfeitures allowed against good time that "has been earned." And the contrary interpretation could also be offered, namely, that in order for the statute to be applied in a consistent manner, all subsections should be interpreted together as allowing forfeiture of only good time that was earned up to the time the forfeiting conduct was committed.
The wording of the statute is not clarified by the DPSC rules, which merely track the statutory language. The DPSC did not file a brief in this court, nor does the record include any briefs that DPSC may have filed in the district court. Therefore, we do not have the benefit of its interpretation of the statute. Nor is there any evidence in the record from which we can determine whether the DPSC routinely imposes forfeiture of unearned good time in disciplinary matters or whether Cao's penalty was an anomaly.
Examining the jurisprudence, we note that this court stated in one case that the provisions of LSA-R.S. 15:571.4 are clear and unambiguous, and therefore must be applied as written; however, that case addressed provisions that are not at issue in this appeal. Cf. Chamblee v. Stalder, 03-0061 (La.App. 1st Cir.11/7/03), 868 So.2d 88, 90 (prisoner who escaped from a work-release facility was not subject to forfeiture of all good time earned prior to escape, when the statute, as then written, penalized only escape from a correctional facility or from the lawful custody of a law enforcement officer or officer of the department). In fact, our research has disclosed only one Louisiana case in which the possibility of the forfeiture of future good time was mentioned. In Madison v. Ward, 00-2842 (La.App. 1st Cir.7/3/02), 825 So.2d 1245, 1254, this court stated that the prison's administrative remedy procedure is the exclusive remedy for "disciplinary actions in which prospective good time is forfeited," and appellate jurisdiction for such a claim rests sequentially with the district court and the court of appeal. However, this comment by the court was intended only to explain the procedural steps applicable to such cases, and expressed no opinion concerning whether such a forfeiture is authorized. Therefore, the jurisprudence does not provide any *857 guidance on the interpretation of the statute concerning forfeiture of good time.
Black's Law Dictionary defines "forfeiture" as "something to which the right is lost by the commission of a crime or fault or the losing of something by way of penalty." Black's Law Dictionary 584 (5th Ed.1979). From this, one could reason that the losing of a right to something could include something that has not yet been obtained, but which one has a right to obtain. However, it follows with equal dignity that before one can lose something or have it taken away, one must have it. Both interpretations are equally supportable under the dictionary definitions.
It seems apparent that there is an inherent ambiguity in the word "forfeiture," in that it can legitimately be interpreted in two ways  as a penalty involving the loss or removal of something already possessed, owned, or earned, or as the loss of a right to something that has not yet been obtained or earned. When there is an ambiguity, the legislative history can be reviewed in an attempt to determine the intent of the legislators.
The 1995 amendment increased the forfeiture provision to allow the imposition of the forfeiture of good time up to 180 days. The change was initiated in Senate Bill No. 473, which was referred to various committees in the Senate before the final vote. The Committee on Judiciary A reviewed the bill on April 18, 1995, and reported it favorably. The minutes of that meeting reflect that the purpose of the bill was "to revoke good time for criminals who do not deserve it to a greater degree than currently provided by law." In the Administration of Criminal Justice Committee, the minutes of the meeting on May 30, 1995, state, "Senator Barro presented Senate Bill No. 473, which would provide that forfeiture of good time may apply to a maximum of one hundred eighty days of earned good time." There was no discussion, and the bill was also reported out of committee favorably. Before the amendment, good time could be earned at the rate of thirty days a month, and the maximum that could be forfeited was thirty days, except for escape and battery on an employee. The bill "gave the department more discretion in denying more than thirty days good time" for those criminals whose behavior warranted greater punishment. The bill passed with no further discussion. The use of the expression "earned good time" in one committee hearing and "to revoke good time" in the other hearing might suggest that prospective good time was not to be forfeited, but we hesitate to read that much into this language when the issue was not directly addressed in either committee.
Faced with ambiguity in the commonly accepted definition of the word "forfeiture," inconsistency in the statutory subsections, no clear indication of legislative intent, no applicable jurisprudence, and no explanation of DPSC's interpretation or application of the penalty, we return to the point from which we started  the wording of subsection (A) of the statute. That provision initially says DPSC is to determine on a monthly basis whether good time has been earned by inmates in its custody. It then states that good time which has been earned by inmates shall not be forfeited except as provided in the other statutory provisions. Had the legislators intended to allow forfeiture of good time that had not yet been earned, but might be earned or could be earned in the future, the statute could have been drafted to make that intention clear. We conclude, therefore, that a strict construction of the statute mandates the conclusion that unless good time has been earned by an inmate, it cannot be forfeited. Therefore, forfeiture of prospective or future good *858 time is not authorized by the statute, and the imposition of such a penalty is excessive.
Cao claims he had earned a total of 309 days of good time while in custody. He had been penalized by the forfeiture of 180 days in the past, and the forfeiture of 30 days was imposed on February 22, 2002, leaving only 99 days of earned good time on February 27, 2002. Therefore, the forfeiture of 180 days of good time on that date exceeded what was allowed by law. We express no opinion as to the accuracy of Cao's computations. However, we remand this matter to the DPSC to (1) re-compute Cao's good time to ensure that the forfeiture imposed on February 27, 2002, encompassed only the forfeiture of good time that Cao had earned as of the date of the forfeiting conduct and not any prospective good time, and (2) to make any corrections to the DPSC records concerning Cao's good time that might be necessary as a result of such computation. See Varner, 806 So.2d 121.
Cao's other assignment of error is that the court erred in concluding he had been offered a copy of the disciplinary report, but had refused to accept it. This conclusion was based on the officer's statement to that effect in the report. According to the administrative record, Cao testified that he had been transferred to administrative segregation after the incident, and the guard was still working in another unit. Therefore, Cao argued, the officer could not have given him a copy of the disciplinary report. On this issue, Cao's testimony was the only evidence offered concerning the officer's duty location.[5] The officer's statement on the report provided a reasonable factual basis for this factual conclusion, and the record does not demonstrate that this finding was clearly wrong. See Stobart v. State, through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993). Moreover, the choice to accept that written evidence over the inmate's testimony is within the discretion of the trier of fact. Where factual findings are based on determinations regarding the credibility of witnesses, the trier of fact's findings demand great deference and are virtually never manifestly erroneous or clearly wrong. Secret Cove, L.L.C. v. Thomas, 02-2498 (La.App. 1st Cir.11/7/03), 862 So.2d 1010, 1016, writ denied, 04-0447 (La.4/2/04), 869 So.2d 889. Therefore, we find no merit in the second assignment of error.

CONCLUSION
For the foregoing reasons, we reverse the judgment of the district court and remand this matter to the DPSC for further action in accordance with this opinion. All costs of this appeal, in the amount of $293.62, are assessed to DPSC.
REVERSED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] The commissioner cited no authority for this statement.
[2] See LSA-R.S. 15:1177 regarding judicial review of administrative actions.
[3] This subparagraph was amended by 2004 La. Acts, No. 43, § 1, to include escape from a work-release facility or program, in response to this court's decision in Chamblee v. Stalder, 03-0061 (La.App. 1st Cir.11/7/03), 868 So.2d 88, 90.
[4] Before its amendment in 1995, the forfeiture of good time for "all other cases" was not to exceed "the maximum number of days allowable for any one month of time served...." See former LSA-R.S. 15:571.4(C), amended by 1995 La. Acts, No. 980, § 1. Like the current provision, this wording in the statute did not specifically state whether such forfeiture could include good time that, although it was "allowable" for any one month of time served, had not yet been earned.
[5] We note also that Cao confirmed at the hearing before the commissioner that he did receive the disciplinary report at some point.