950 So.2d 736 (2006)
Clarence SAMUELS
v.
Jerry GOODWIN, Venetia Michael, and Richard Stalder.
No. 2005 CA 2131.
Court of Appeal of Louisiana, First Circuit.
November 3, 2006.
*737 Clarence Samuels, St. Gabriel, Plaintiff/Appellee Pro se.
Susan Wall Griffin, Baton Rouge, Counsel for Defendants/Appellants Jerry Goodwin, Venetia Michael, and Richard Stalder.
Before: KUHN, GAIDRY, and WELCH, JJ.
KUHN, J.
Defendants-appellants, Jerry Goodwin, a deputy warden of the David Wade Correctional Center, Venetia Michael, the warden of the David Wade Correctional Center (collectively the wardens), and Richard Stalder, the Secretary of the Department of Public Safety and Corrections (the Department) appeal the trial court's judgment granting declaratory relief to petitioner-appellee, Clarence Samuels. We reverse.

FACTS AND PROCEDURAL BACKGROUND
Samuels was convicted of simple robbery and incarcerated in the David Wade Correctional Center. He filed this petition for judicial review after having been denied relief at every level of the three-step Administrative Remedy Procedure. In his initial request for relief, Samuels contended that subsequent to his initial refusal to provide a blood sample for the state's DNA database, see La. R.S. 15:601-620,[1] *738 the wardens threatened to charge him with a disciplinary infraction, place him on lock-down, forfeit good time, and take the blood sample against his will. Samuels subsequently provided the department with a blood sample as requested. But in his petition for judicial review, Samuels asserted that the wardens collected his blood inappropriately, urging that the department regulations limit the method of collecting his DNA sample to use of a buccal swab.
After determining that the department regulation permits use of force to obtain a sample of DNA against a prisoner's will, a commissioner for the Nineteenth Judicial District Court concluded that there was no coercion by the wardens. Insofar as his challenge of the method in which his DNA sample was collected, the commissioner noted that the only relief available to Samuels was a declaratory judgment finding that defendants did not follow the proper procedures. The commissioner recommended that the department's decision to deny Samuels relief be reversed, reasoning the department was manifestly erroneous because its regulations required the wardens to use a swab rather than draw blood for a prisoner who refused to provide a DNA sample when initially requested. The district court judge agreed and issued a judgment granting Samuels the requested declaratory relief. This appeal by defendants followed.

DISCUSSION
La. R.S. 15:1177 A(9) provides that the court may reverse or modify the decision only if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are
(a) In violation of constitutional or statutory provisions.
(b) In excess of the statutory authority of the agency.
(c) Made upon unlawful procedure.
(d) Affected by other error of law.
(e) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
(f) Manifestly erroneous in view of the reliable, probative and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
The trial court applies the manifest error standard of review in reviewing the facts as found by the administrative tribunal; the trial court applies the arbitrary and capricious test in reviewing the administrative tribunal's conclusions and its exercise of discretion. Save Ourselves, Inc. v. Louisiana Environmental Control Comm'n, 452 So.2d 1152, 1159 (La.1984); Rochon v. Whitley, 96-0835, pp. 4-5 (La. App. 1st Cir.2/14/97), 691 So.2d 189, 192. On review of a district court's judgment in a suit for judicial review under La. R.S. 15:1177, no deference is owed by the court of appeal to the factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal *739 conclusions of the court of appeal. Hakim-El-Mumit v. Stalder, 03-2549, p. 3 (La.App. 1st Cir.10/29/04), 897 So.2d 112, 113-14.
Defendants contend the trial court erred in finding that if a prisoner initially refuses to give the DNA sample required by La. R.S. 15:609, the only proper method for collection is use of a buccal swab. Defendants further assert the trial court erred in its interpretation of and conclusion that they violated Department Regulation No. B-08-016.
Department Regulation No. B-08-016[2] provides in relevant part:
7. PROCEDURES:
A. All DNA samples will be obtained using a DNA Database Blood Collection Kit for DNA analysis. . . .
8. REFUSAL TO SUBMIT SAMPLE:
A. The Warden or designee shall obtain a DNA sample from any inmate who is required by statute to submit a sample. If the inmate refuses to provide a sample, the Warden or designee is authorized pursuant to La. R.S. 15:609(I), to employ reasonable force as necessary to obtain a sample. In this case, buccal swab DNA collection is authorized.
Based on these provisions, the trial court concluded that Samuels was entitled to a judgment granting declaratory relief.
The meaning of a law must first be sought in the language employed. If that is plain, it is the duty of the courts to enforce the law as written. David v. Our Lady of the Lake Hosp., Inc., 02-2675, p. 11 (La.7/2/03), 849 So.2d 38, 46. Thus, interpretation of any statute begins with the language of the statute itself. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695, p. 12 (La.6/29/01), 808 So.2d 294, 302. Words of a law must be given their generally prevailing meaning. La. C.C. art. 11. When the wording of a revised statute is clear and unambiguous, the letter of it shall not be disregarded under the pretext of pursuing its spirit. La. R.S. 1:4. Rather, the law must be applied as written, and no further interpretation can be made in search of the intent of the legislature. La. C.C. art. 9; Trahan v. Coca Cola Bottling Co. United, Inc., 04-0100, p. 6 (La.3/2/05), 894 So.2d 1096, 1102. The statutory and jurisprudential rules for statutory construction and interpretation apply equally well to ordinances, rules, and regulations. Cao v. Stalder, 04-0650, p. 5 (La.App. 1st Cir.5/6/05), 915 So.2d 851, 854.
The phrase, "In this case, buccal swab DNA collection is authorized," in section 8(A) is obviously limited to those instances in which the warden is required to "employ reasonable force as necessary to obtain a sample." The section otherwise mandates the Warden or designee "obtain a DNA sample from any inmate" without reference to the method of collection. Thus, use of the DNA Database Blood Collection Kit as specified in section (7)(A) under these circumstances was an appropriate method of collecting a DNA sample.
Because the undisputed facts demonstrate that the wardens did not have to employ reasonable force to obtain the DNA sample from Samuels, the department's decision to collect the sample by drawing blood was in conformity with the regulation. The district court erred in concluding that the department was manifestly erroneous in finding that it was entitled to collect a sample of Samuels' DNA *740 by a method other than use of a buccal swab. Its grant of declaratory relief is reversed.

DECREE
For all these reasons, the district court's judgment is reversed. Appeal costs are assessed against petitioner-appellee, Clarence Samuels.
REVERSED.
NOTES
[1] According to express findings and objectives set forth in La. R.S. 15:602:

The Louisiana Legislature finds and declares that DNA data banks are important tools in criminal investigations, in the exclusion of individuals who are the subject of criminal investigations or prosecutions, and in deterring and detecting recidivist acts. More than forty states have enacted laws requiring persons arrested for or convicted of certain crimes, especially sex offenses, to provide genetic samples for DNA profiling. Moreover, it is the policy of this state to assist federal, state, and local criminal justice and law enforcement agencies in the identification and detection of individuals in criminal investigations and in the identification of missing persons, to assist in the recovery or identification of human remains from disasters, and to assist with other humanitarian identification purposes. It is therefore in the best interest of the state to establish a DNA data base and a DNA data bank containing DNA samples submitted by individuals arrested, convicted, or presently incarcerated for felony sex offenses and other specified offenses.
See also La. R.S. 15:609, particularly providing for the drawing and taking of DNA samples.
[2] The parties do not challenge the validity, see La. R.S. 15:604(2), or applicability of this regulation to the facts of this case.